

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2008

# Pineda v. Ford Mtr Co

Precedential or Non-Precedential: Precedential

Docket No. 07-1191

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Pineda v. Ford Mtr Co" (2008). *2008 Decisions.* Paper 1342.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1342

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-1191

JOSE PINEDA,

Appellant,

v.

FORD MOTOR COMPANY

On Appeal from the Judgment of the United
States District Court
for the Eastern District of Pennsylvania
(Civ. No. 04-cv-3359)
Magistrate Judge: Honorable Jacob P. Hart

Argued: February 5, 2008

Before: McKEE, AMBRO, *Circuit Judges*, and IRENAS,[*]
*Senior District Judge*.

---

[*] Honorable Joseph E. Irenas, Senior United States
District Judge for the District of New Jersey, sitting by
designation.

Scot R. Withers, Esq. (Argued)
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA  19381
        and
Andrew P. Motel, Esq.
Law Offices of Andrew P. Motel, LLC
330 North High Street
West Chester, PA 19380

Counsel for Appellant

C. Scott Toomey, Esq.
Tiffany M. Alexander, Esq.
Kristen E. Dennison, Esq. (Argued)
Campbell Campbell Edwards & Conroy, P.C.
690 Lee Road, Suite 300
Wayne, PA  19087

Counsel for Appellee

_____

OPINION
_____

IRENAS, *Senior United States District Judge*.

Appellant Jose Pineda is an automobile technician who

was injured when the rear liftgate glass of a 2002 Ford Explorer shattered. He filed a products liability action against Appellee Ford Motor Company in the United States District Court for the Eastern District of Pennsylvania and retained an expert to support his claims. After extensive discovery and a *Daubert* hearing,[1] the District Court[2] ruled that Pineda's proffered expert witness was not qualified to testify and that his methodology

---

[1] A *Daubert* hearing refers to a pretrial hearing where a court determines whether a proffered expert witness's testimony is both relevant and reliable, and thus admissible as evidence, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] On June 16, 2006, the Honorable Bruce W. Kauffman, United States District Judge, referred this action to the Honorable Jacob P. Hart, United States Magistrate Judge, to conduct any and all proceedings and to order the entry of a final judgment. The referral was made pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 and with the consent of all parties. Upon an appropriate referral and an entry of judgment, "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

was not reliable. The District Court then granted Ford's motion to exclude the testimony of Pineda's expert and its motion for summary judgment. For the reasons set forth below, we will reverse both decisions and remand for further proceedings.

## I.

Pineda was employed as an automobile technician by Murphy Lincoln-Mercury in West Chester, Pennsylvania. On July 18, 2002, he worked to replace several components of the rear liftgate on a 2002 Ford Explorer. Pineda initially examined the Explorer on July 2, when the owner brought the vehicle to the dealership for repair because the rear liftgate would not close properly. Pineda determined that one of the hinges that connected the liftgate glass to the body of the Explorer was damaged. He also knew that, in April of 2001, Ford issued a Special Service Instruction for repair of the liftgate brackets on 2002 Explorers built between February 5 and March 30, 2001.[3] The brackets connected the lift cylinders, which supported the

---

[3] The vehicle Pineda inspected was built on March 12, 2001.

rear liftgate in the open position, to each side of the liftgate glass. Pineda told the owner of the vehicle to refrain from using the rear liftgate until it could be repaired. He then ordered replacement lift cylinders, liftgate brackets, and liftgate hinges, all of which were available for installation on July 18.

That morning, Pineda replaced the lift cylinders and liftgate brackets without incident. Later in the afternoon, he began to replace the liftgate hinges. During his deposition, Pineda described what happened next:

> It was right after lunch, somewhere around 1:00, when I finished to install the hinge on the left side and moved to the right side. I got the book because [there] was no information related to the torque specs on the hinge, so I got the book, torqued the hinge [on the glass side] to the specs of the book, then put the nut on the body side. When I finished torquing the nut on the body side, I hear a click and felt like the glass was exploding. I closed my eyes and I felt something hit my leg.
>
> . . . .
>
> I stepped back with my eyes closed, two steps. I was in so much pain on my leg that I have to open my eyes, and I saw my calf wide open.

Pineda filed a complaint against Ford on July 16, 2004, in the Eastern District of Pennsylvania. The complaint alleged that the liftgate glass and hinges on the 2002 Ford Explorer were

5

defective in design and that Ford failed to adequately warn of the dangerous condition.[4]

In order to satisfy his burden of proof on the products liability claims, Pineda retained Craig D. Clauser, P.E., as an expert. Clauser produced a report on September 30, 2005. It concluded that the liftgate glass shattered because its "design was defective in that it was only marginally able to resist fracture in its intended service and the pertinent manual and bulletins lacked adequate instructions and warnings." Clauser's report noted that "[n]o improper action by Mr. Pineda caused this incident to occur."[5]

---

[4] The complaint also alleged negligence and breach of express and implied warranties. Pineda has not raised either claim as an issue on appeal. We therefore consider any arguments as to those claims waived. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065-66 (3d Cir. 1991).

[5] Ford claims, both in its brief to this Court and during oral argument, that Clauser opined that Pineda's own error could have caused the liftgate glass to shatter because Pineda "misaligned the glass." This assertion not only confuses the primary issue before us–whether the District Court erred in excluding Clauser's testimony–but also mischaracterizes Clauser's consistent position that Pineda's injury was not caused by his own improper action. In addition to the statement in his report, Clauser was asked during his deposition: "So you do believe that [Mr. Pineda] did misalign the glass, *but he did it because he didn't have enough instructions not to*?" Clauser responded, "That's correct."

6

Ford deposed Clauser on March 31, 2006. He stated at the deposition that his design defect opinion was based on his comparison of warranty claims for 2002 and 2003 model year Ford Explorers. Specifically, his analysis of performance reviews based on the warranty claims led him to conclude that 2002 models had a design defect related to the liftgate glass and hinges. His opinion was also based on third-party opinions he found on the internet at BlueOvalNews.com.[6]

Clauser similarly testified during the *Daubert* hearing that the reason Pineda misaligned the glass was that there were inadequate instructions or warnings provided by Ford. We do not render any opinion as to the accuracy or credibility of these statements, since that would be for a jury to determine. However, the record does not support the position that Clauser ever opined that Pineda committed an error that could have been the proximate cause of his injury.

But even if the record supported Ford's assertion, the question of whether Pineda's own conduct caused his injury should generally be left to the jury, if such a question is presented to the jury at all. *See Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 437, 441 (3d Cir. 1992) (noting that the Pennsylvania Supreme Court refuses to permit the introduction of evidence of a plaintiff's negligence in a products liability action for purposes of establishing comparative fault, but that some Pennsylvania lower courts have admitted evidence of contributory negligence for a jury to consider on the issue of causation). The question is simply not relevant to the issue of whether Clauser was qualified to testify and whether his methodology was reliable.

[6] BlueOvalNews.com is an independent website that provides forums for visitors to discuss news about Ford and

As to his failure to warn opinion, Clauser testified that the 2002 Explorer's service manual did not provide specific, step-by-step instructions for replacing the liftgate brackets and hinges and reconnecting them to the liftgate glass. He further testified that the service manual failed to warn that the need for following such instructions was a safety issue. Clauser admitted that, in reaching his conclusions, he did not perform any objective testing of his own, e.g., stress analysis or other experiments on the liftgate glass of the vehicle at issue or on 2002 Explorers generally.

After the deposition, Ford filed motions to exclude Clauser's testimony and for summary judgment. Alternatively, it moved for a pretrial *Daubert* hearing. The bases for these motions were that Clauser was unqualified to provide expert testimony and that, even if he were qualified, Clauser's testimony was unreliable under Federal Rule of Evidence 702 and *Daubert*.[7] The District Court granted the motion for a

developments with the company's array of automobiles. The website does not appear to be endorsed or supported by Ford.

[7] Ford based its motion for summary judgment on the assumption that its motion to exclude Clauser's testimony would be granted. Ford argued that no genuine issue of

8

*Daubert* hearing, which was held on September 28, 2006. Prior to the hearing, on July 11, 2006, Clauser provided a supplemental report, in which his opinions from the first report remained unchanged. Nonetheless, at the start of the hearing, Pineda voluntarily withdrew his design defect claim and proceeded only on his failure to warn claim.

Clauser was the only witness to testify at the *Daubert* hearing. Pineda's counsel first asked Clauser to discuss his credentials as a professional engineer with experience in materials analysis and systems failure analysis. Clauser admitted that he was not a warnings expert, except to the extent that "a warning and instructions" are "solution[s] to an engineering problem." He also testified about Ford's 2004 Safety Recall Instruction (the "SRI"), which described the procedure for replacing the liftgate brackets and hinges on the 2002 Ford Explorer. Clauser stated that the SRI, unlike the 2002 service manual used by Pineda, provided adequate warnings and proper, detailed instructions for the replacement

---

material fact would remain without Clauser's testimony, and Pineda's products liability claims would fail as a matter of law.

9

of the liftgate brackets and hinges.[8]

By Opinion and Order dated November 15, 2006, the District Court granted Ford's motion to exclude Clauser's testimony in its entirety because: (1) Clauser admitted that he was not qualified as a warnings expert; (2) when discussing alternative warnings, Clauser could not compare the 2002 service manual to the SRI pursuant to Federal Rule of Evidence 407; and (3) Clauser's testimony was not based on an accepted methodology, i.e., his testimony was unreliable. The District Court held Ford's motion for summary judgment in abeyance pending Pineda's response to the issue of whether he could withstand summary judgment without expert testimony.

Pineda did not file the requested response by the District Court's imposed deadline of November 29, 2006. He sought an

---

[8] Clauser testified that, while a warning and instructions are low on the "safeguarding hierarchy," they are "an engineering tool." He stated that the hierarchy requires an engineer to, in order of preference, "design the defect out, guard against it, or use instruction." The thrust of his testimony was that any number of instructions or warnings could have been sufficient to adequately warn of the possible danger to an automobile technician, and that the SRI was sufficient and the 2002 service manual used by Pineda was not. However, Clauser stated that he was not "put[ting] [him]self out as an expert on exactly what the wording [of alternative instructions or warnings] should be."

extension of time until December 13, which the District Court granted, but Pineda failed to meet that deadline as well. On December 19, the District Court granted Ford's motion for summary judgment and incorporated its November 15 decision by reference. Pineda filed a timely notice of appeal on January 18, 2007. His appeal does not challenge the District Court's conclusion that "in the absence of expert testimony, a jury could not render a just and proper decision" on his failure to warn claim. Thus, the only issue before us is whether the District Court erred in its decision to exclude Clauser's proffered expert testimony.[9]

## II.

The District Court had jurisdiction based upon the diversity of the parties under 28 U.S.C. § 1332. We have jurisdiction over the District Court's final order granting Ford's motion for summary judgment pursuant to 28 U.S.C. § 1291. "Under the 'merger rule,' prior interlocutory orders [such as the

---

[9] Because we find that the District Court erred in excluding Clauser's testimony, the District Court's grant of summary judgment in favor of Ford was necessarily erroneous since that decision was based entirely on the absence of expert testimony on behalf of Pineda.

11

order excluding the testimony of Clauser] merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996).

We apply an abuse-of-discretion standard when reviewing a District Court's decision to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999). "An abuse of discretion arises when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *TMI*, 193 F.3d at 666 (internal quotation marks omitted). We will not interfere with the district court's decision "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (internal quotation marks omitted). To the extent that the District Court's decision involved a legal interpretation of the Federal Rules of Evidence, our review is plenary. *See id.*

III.

Under the Federal Rules of Evidence, a trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. *Id.*; *see also* Fed. R. Evid. 401 (defining "relevant evidence," all of which is generally admissible, to mean "evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (emphases added)). "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility."[10] *Kannankeril*,

---

[10] Rule 702, which was amended on April 17, 2000, in response to *Daubert*, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is

128 F.3d at 806.

Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994)). We have interpreted the second requirement to mean that "'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.'" *Id.* (quoting *Paoli*, 35 F.3d at 742).

The District Court found that Clauser failed to meet the first requirement of Rule 702 because he was not qualified as an expert on warnings. It also found that Clauser did not satisfy the second requirement because his methodology was not reliable. When the District Court considered whether Clauser's

> based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

14

methodology was reliable, it ruled that he could not compare the 2002 service manual to the SRI pursuant to Federal Rule of Evidence 407.

We will first address the District Court's finding that Clauser was not qualified as an expert. Then we will discuss the District Court's legal interpretation of the Federal Rules of Evidence. Finally, we will address the District Court's finding that Clauser's methodology was not reliable.

## A. Qualification

In its November 15 Opinion and Order, the District Court stated, "Clauser has freely admitted that he is not qualified as a warnings expert, and that he does not purport to be one." Primarily on this basis the District Court found that Clauser was not qualified as an expert as required by Rule 702. Without more, we disagree with such a finding.

Qualification requires "that the witness possess specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). We have interpreted Rule 702's qualification requirement liberally. *See id.*; *see also Paoli*, 35 F.3d at 741. We have held that a "broad range of

knowledge, skills, and training qualify an expert." *Paoli*, 35 F.3d at 741.

This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts. *Id.*[11] "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters).

After Pineda withdrew his design defect claim, the District Court determined that the only permissible expert was

---

[11] *Paoli*, a post-*Daubert* case, relied on two pre-*Daubert* cases in support of this conclusion. *See Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982) (permitting an engineer with only sales experience in automotive and agricultural equipment, who also taught high school automobile repair, to testify in products liability action involving tractors); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979) (holding that an expert could testify that unguarded elevator buttons constituted a design defect despite expert's lack of specific background in design and manufacture of elevators).

a "warnings expert." The Court found that Clauser was not qualified to testify by primarily relying on Clauser's own statement at the *Daubert* hearing that he did not offer himself as a warnings expert.

Looking beyond this single statement, we find that Clauser's formal qualifications are unassailable. He received a Bachelor of Science and a Master of Science in Metallurgical Engineering and Material Science, and he spent considerable time studying fracture mechanics and modeling materials such as glass. Upon graduation, Clauser worked at Westinghouse Electric in its materials engineering lab and then Phoenix Steel Corporation as the manager of quality control. He eventually joined Consulting Engineers in 1986, where he has consulted with the legal profession on over two hundred cases involving the failure of glass or other ceramics. Given Clauser's extensive formal qualifications, particularly in relation to glass, it appears that the District Court was not satisfied with his substantive qualifications since he was not a warnings expert. We now turn to that inquiry.

Pineda proffered Clauser as an expert to establish two

points. First, Clauser testified that a specific, step-by-step procedure was required in order to reduce the likelihood that the rear liftgate glass would fail when replacing the liftgate brackets and hinges on a 2002 Ford Explorer. More specifically, he opined that such a procedure should have been embodied in an instruction in the 2002 Explorer's service manual but was not. Clauser testified during the *Daubert* hearing that, while he was not proposing what the instruction's precise language should be, he was asserting that a proper instruction was a solution to an engineering problem under the safeguarding hierarchy. To meet Rule 702's liberal qualification requirement, Clauser did not need to be substantively qualified in the design of automobile rear liftgates or the drafting of service manual instructions. Clauser's expertise in the stresses and other forces that might cause a material such as glass to fail was more than sufficient to satisfy Rule 702's substantive qualification requirement.

Additionally, Clauser was proffered to establish that the 2002 service manual should have contained an explicit warning that following the necessary step-by-step instruction was a safety issue. Again, as an engineer, Clauser did not purport to

18

opine on how the warning should be worded or how it should appear in order to effectively convey its message to an automobile technician. He only testified that neglecting to follow the steps of an instruction when replacing the 2002 Explorer's liftgate brackets and hinges might result in failure of the liftgate glass, and that a warning was necessary to alert a technician to the potential problem.[12] Clauser was substantively qualified to testify on this point because a proper warning is also a solution to an engineering problem.

Therefore, we hold that Clauser should have been qualified as an expert even though he may not have been the "best qualified" expert or did not have the "specialization" that the District Court deemed necessary.

## B.    Federal Rules of Evidence 407 and 703

---

[12] The wording or comprehensibility of the warning or step-by-step instruction are not issues before us because the foundation of Pineda's claim is that no warning or instruction existed at all. If, however, Pineda claimed that an existing warning or instruction was ineffective, misleading, or otherwise defective, a true "warnings expert" might be required. Such an expert could be expected to testify as to the syntax, color, size, placement, clarity, or numerous other factors, related to an existing warning or instruction. *See, e.g., Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 886-87 (3d Cir. 1998). But this case does not present a situation where a warnings expert might be necessary.

19

At the *Daubert* hearing, Clauser addressed the issue of alternative instructions and warnings for the safe replacement of the rear liftgate brackets and hinges on 2002 Ford Explorers. Without opining on the precise language, he asserted that the SRI issued by Ford in 2004 was an appropriate alternative to the 2002 service manual language. In its November 15 Opinion and Order, the District Court summarily ruled that Federal Rule of Evidence 407[13] precluded such a comparison.

---

[13] Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, *evidence of the subsequent measures is not admissible to prove* negligence, *culpable conduct*, a defect in a product, a defect in a product's design, *or a need for a warning or instruction*. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407 (emphases added). The Rule rests on two grounds. First, it "rejects the suggested inference that fault is admitted when remedial measures are taken subsequent to an injury." *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1276 (3d Cir. 1992) (internal quotation marks omitted). Second, "Rule 407 is supported by public policy which encourages manufacturers to make improvements for greater safety." *Id.*

We note that there is a possible exception to Rule 407

20

Pineda argues that he only sought to admit the SRI as an example of effective language for an alternative instruction and warning, and not to prove Ford's "culpable conduct" or the "need for a warning or instruction." According to Pineda, any concern of unfair prejudice can be addressed by either a limiting instruction from the District Court or by admitting the language of the SRI without attributing it to Ford. Ford counters that a plain reading of Rule 407 supports the District Court's ruling. We hold that the Court erred because it focused exclusively on Rule 407 and failed to consider Rule 703, which governs the bases of opinion testimony by experts. That rule provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject,

---

for remedial action mandated by superior governmental authority, such as a regulatory agency, because the policy goal of encouraging *voluntary* improvements for greater public safety would not necessarily be furthered by the exclusion of such evidence. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, No. 06-3043, 2007 WL 2874805, at *5 (E.D. La. Sept. 26, 2007) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978)). However, the record before us gives no indication of what prompted Ford to issue the SRI in 2004.

the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

The District Court and the parties conflate the separate issues of whether the SRI itself can be admitted into evidence and whether Clauser's opinion can be admitted if it is based on a consideration of the SRI. Rule 703 is clear that the SRI does not need to be admissible evidence in order for Clauser's opinion that the 2002 service manual lacked adequate instructions and warnings to be admitted.[14] The Rule's only

---

[14] Rule 703, as amended on April 17, 2000, permits otherwise inadmissible evidence to be disclosed to the jury if the trial court determines that the probative value in assisting the jury *substantially* outweighs the prejudicial effect. However, the Rule's balancing test clearly establishes a presumption against disclosure to the jury of otherwise inadmissible evidence. *See* Fed. R. Evid. 703 advisory committee's notes (2000 Amendments). While we express no opinion as to whether the SRI should be admitted into evidence, the advisory committee's notes implicitly endorse the possible solution proposed by Pineda with regard to a limiting instruction: "If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for

22

requirement is that the data be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." We find that it is reasonable for an engineer to rely upon a warning and alternative safety instruction subsequently issued by a manufacturer in forming an opinion that an earlier service manual fails to provide adequate instructions and warnings to automobile technicians. Thus, despite Rule 407's general exclusion of subsequent remedial measure evidence, we hold that Rule 703 permits Clauser to base his opinion on a consideration of the SRI.

## C.    Reliability

As we recognized earlier, pursuant to the second

---

substantive purposes." *Id.*

However, Rule 703's presumption against the disclosure of otherwise inadmissible evidence is only applicable when the evidence is offered by the proponent of the expert. *Id.* If Ford elects to cross-examine Clauser on the bases of his opinion, which would include the SRI, it would become part of the record for the jury to consider. *See* Fed. R. Evid. 705 ("The expert may in any event be required to disclose the underlying facts or data [supporting his opinion] on cross-examination."); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination.").

requirement of Rule 702, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742 (citing *Daubert*, 509 U.S. at 589). While a litigant has to make more than a prima facie showing that his expert's methodology is reliable, we have cautioned that "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* at 744; *see also TMI*, 193 F.3d at 665 (stating that "the standard for determining reliability is not that high, even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702" (internal quotation marks and citation omitted)); *Kannankeril*, 128 F.3d at 806 ("Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined.").

A trial court should consider several factors in evaluating whether a particular methodology is reliable. These factors, enunciated in *Daubert* and this Court's decision in *United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985), may include: (1) whether a method consists of a testable hypothesis; (2) whether

24

the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Paoli*, 35 F.3d at 742 n.8.

The factors drawn from *Daubert* and *Downing*, however, "are neither exhaustive nor applicable in every case." *Kannankeril*, 128 F.3d at 806-07; *see also Kumho Tire*, 526 U.S. at 151 (noting that *Daubert* itself "made clear that its list of factors was meant to be helpful, not definitive"); *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 536 (D.N.J. 2001) (reconfiguring *Daubert* for application to "technical" or "other specialized" subjects such as engineering and identifying several factors for trial courts to consider in evaluating reliability, including relevant literature, evidence of industry practice, and product design and accident history). "The inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594.

Here, the District Court focused its analysis extensively on "indicia of reliability specific to warnings and instructions." The Court determined that Clauser's opinion that the 2002 service manual failed to provide adequate instructions and warnings was based on nothing more than his "generalized experience." In particular, it criticized Clauser for declining to offer proposed alternative language for a warning, for failing to test the effectiveness of a possible alternative warning, and for failing to compare the language of the 2002 service manual with the language provided by other automobile manufacturers.[15] The District Court also held that Clauser could not adequately testify as to whether the service manual's lack of instructions actually caused Pineda's injury because Clauser did not test the 2002 Ford Explorer at issue or any other 2002 Explorers.

The District Court's inquiry of the reliability of Clauser's methodology did not demonstrate the appropriate level of flexibility required by Rule 702 and our past precedent. First, the District Court focused too narrowly on Clauser's failure

---

[15] It was in relation to this last point that the District Court held that Rule 407 precluded Clauser from comparing the language of the 2002 service manual with the SRI issued by Ford in 2004.

26

either to offer proposed alternative language for a warning or to test the effectiveness of alternative warnings. Pineda proffered Clauser as an engineering expert who understood the stresses and forces that might cause glass to fail. Clauser's specialized, rather than generalized, experience in this area allowed him to recognize that exerting a force on one area of the rear liftgate glass before exerting a force on another area of the glass could lead to its shattering. Clauser did not have to develop or test alternative warnings to render an opinion that the 2002 service manual did not provide adequate, step-by-step instructions to account for the different stresses that might be exerted when an automobile technician replaces the rear liftgate brackets and hinges, or that the lack of instructions was a safety issue for the technician.

In addition, as we discussed above, Rule 703 permits Clauser to base his opinion on a comparison of the 2002 service manual language with the language of the SRI, regardless of whether Rule 407 might render the SRI inadmissible in evidence. As a result, Clauser did not have to compare the language of the 2002 service manual with the language provided

27

by other manufacturers in order to render a reliable opinion that Ford's service manual failed to provide adequate instructions or warnings.[16]

Finally, the District Court erred in holding that Clauser failed to establish a causal link between the alleged defect in the service manual language and Pineda's injury. It relied on cases that found such a connection lacking in situations where cause was far more attenuated. For example, one case excluded an expert's testimony because the expert could not address any defect in the design of a computer keyboard or any causal association between the keyboard and plaintiffs' wrist injuries. *See Allen v. IBM*, No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016 (D. Del. May 19, 1997). The issue in *Allen* was not whether a lack of an instruction or warning caused injuries, but rather whether the product itself caused injuries. Here, there can be no doubt that the shattered liftgate glass caused Pineda's injuries. Clauser has opined that the instructions and warnings in the 2002 service manual were inadequate and that an

---

[16] We note, however, that Clauser's opinion would probably be more reliable if he consulted the service manuals of other manufacturers and compared their language to Ford's 2002 service manual.

28

automobile technician with thorough repair instructions and an adequate safety warning would not have been injured as a result of the rear liftgate glass shattering. *See Pavlik*, 135 F.3d at 886 (noting the general presumption that an individual will read and heed any warnings attached to a product). Any dispute between the parties about the strength of the evidence in this case should be resolved by the jury.

## IV.

Accordingly, for the reasons set forth above, we will reverse the District Court's decisions excluding Clauser's proffered expert testimony and granting summary judgment in favor of Ford. We remand for further proceedings consistent with this opinion.