OPINION OF THE COURT
RENDELL, Circuit Judge.
The government appeals from the District Court’s denial of its motion in limine and resulting exclusion of the expert report and testimony of Marine Science Technician Chief Matthew Jones (“Jones”), proffered to prove that oil-contaminated bilge water and sludge (“oily waste”) was discharged from the Valparaiso Star (“the Ship”) into the sea in January 2007, violating several federal statutes. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731.
We review the District Court’s order for abuse of discretion.[1]
The events surrounding the investigation conducted by Jones, and his extensive testimony at the Daubert hearing regarding his experience, activities, reasoning, and conclusions, are well known to the parties and will not be recounted here. Jones opined that the oily waste was discharged into the sea. The District Court excluded Jones’s opinion after conducting the Daubert hearing, and issued a thorough, 15-page opinion setting forth his basis for excluding Jones’s report and opinion. We find the District Court’s opinion to be persuasive and correct. We wholeheartedly adopt its reasoning and conclusion and will affirm.
On appeal the government levels two basic attacks on the District Court’s reasoning. First, it urges that the Court misapplied the “reliability factors” — namely as to Jones’ experience and the general acceptance of his methodology; and second, it urges that the District Court erred in crediting alternative explanations as to why the oily waste may have been unaccounted for — -other than discharge into the sea.
We will not concern ourselves with Jones’s expert qualifications, but assume for our purposes that they are acceptable.[2] The real issue before the District Court, and before us, concerns the “reliability” of Jones’s opinions, based upon his methodology. See Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The government urges that Jones’s methodology was that of “reasoning to the best inference,” akin to a form of analysis known as “differential diagnosis,” as described by our court in In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 758 (3d *755 Cir.1994) (“Paoli II”). Differential diagnosis is the basic method used in internal medicine and involves:
the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings.
Kannankeril v. Terminix Int’l, Inc., 128 F.3d 802, 807 (3d Cir.1997) (quoting Sted-man’s Medical Dictionary 428 (25th ed.1990)) (emphasis added).
As applicable here, reasoning to the best inference would involve the systematic and objective elimination of alternative causes. Unfortunately for the government, Jones’s expert report does not refer at all to alternative causes. Instead, the report recites what Jones learned upon his inspection and notes that what he saw was “consistent with the allegation that the bilge/ballast pipes were used as a delivery system to discharge bilge directly from the bilge wells into the ocean.” (App.669-70.) Nowhere in the report does Jones address other potential causes.
Jones fared no better at the Daubert hearing. During his direct testimony he failed to volunteer any information as to any alternatives that he considered — other than the discharge to a reception facility— let alone as to why he objectively and systematically rejected them. In response to the direct question on cross-examination as to the basis for his opinion that waste was discharged overbroad while the ship was at sea, he stated:
A: Reviewing the oil record book, the tank sounding logs and the bridge log for the location of the vessel and you know, the receipts, too, that there wasn’t anything that was discharged to a reception facility. And then the other thing that helped me determine that, too, was I asked questions of the captain and the chief engineer and everything of why the tank levels dropped during those days and they didn’t have an explanation for me.
Transcript of motions hearing on January 30, 2008, p. 194. (App.177.)
The government characterizes Jones’s reasoning process as his having “draw[n] an inference from the allegations of Singh and Dhabel ...” as “the best explanation among possible explanations for what happened to oily waste aboard the Ship on January 14-15, 2007.” (Appellant’s Br. 39.) However, in his testimony offered in support of the admissibility of his opinion, he was totally silent as to what other explanations he considered, other than discharge at a reception facility. While certain facts might have supported a permissible inference as to discharge, as the government urges, the very hallmark of the methodology relied upon is the elimination of alternative causes. This Jones did not even attempt to do in either his proffered report or his testimony.
The government attempts to undermine the other possible causes identified by the District Court and appellees by arguing that Jones effectively dealt with them and demonstrated that they were not plausible.[3]
As to the possibility that the oily waste was moved to another tank on the ship, Jones relied on what he was told by crew *756 members and examined only the four tanks that the records indicated were used for oily waste and were listed as tanks appropriate for holding oily waste (three of the four tanks were so listed). He did not consider whether the oil might have been transferred to other tanks on board, or explore the allegation of sabotage.
Similarly, as to his failure to consider other possible uses for the hose with oil residue, the government urges that Jones could simply rely on what others told him. Jones testified that:
A: If someone had told me that when I was asking what the hose was used for and no one could explain what that hose was used for, then I might consider that, but when no one even would admit they had ever even seen the hose before, no, it wouldn’t change my opinion.
(Transcript of Testimony of Matthew Jones at Daubert hearing, App. 378.)
In its brief, the government contends that “[t]hat explanation makes perfect sense: Chief Jones cannot logically be required to offer a rejoinder when no alternative explanation was tendered at the time of his Port State Control inspection.” (Appellant’s Br. 47-48.)
However, we believe that an expert’s investigation requires inquiry and actual investigation, not a determination based solely on what the expert is told. The District Court’s criticism of Jones’ failure to consider the length of the hose, or the fittings’ match, was not a “quibble,” as the government urges; it was an appropriate challenge to his failure to conduct his own investigation rather than rely on what others told him.
The government’s argument as to the reasonableness of Jones’s explanation for discarding the third possible alternative— that is, as to other ways in which oil “could have infected” the bilge/ballast discharge value — is similarly flawed. Again, it urges that he need not have pursued the theory of sabotage “when the proponent of that theory was unwilling to provide him with even a minimum quantum of supporting evidence.” (Appellant’s Br. 49, 50.)
We submit that one who accuses his fellow crew members of sabotage may well stop at pointing an investigator in the direction of the real cause. The trained investigator would not be stymied by such silence, but, rather, should be alerted to the need to then conduct an independent investigation. In short, the government’s excuse for Jones’s failure in this regard is unconvincing.
Simply stated, Jones’s reasoning did not rule out other possible causes, or provide “an intelligible response as to why it was not the actual cause.” Hines v. Consol. Rail Corp., 926 F.2d 262, 270 n. 6 (3d Cir.1991). Instead, he accepted the cause that was consistent with the what the whistleblower, Gopal Singh, told him. He did not conduct a “differential diagnosis.”[4] Therefore, he failed to follow the reliable methodology that he urges as the basis for the admissibility of his opinion, and his opinion could thus be excluded. The District Court so held, and we agree.[5]
*757 Based on the foregoing, and given the latitude given to the District Court under the abuse of discretion standard, as explicated by the Supreme Court in Kumho Tire, we will AFFIRM.

. We apply an abuse of discretion standard when reviewing a district court’s decision to admit or exclude expert opinion testimony and its decisions as to how to determine the reliability of that testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir.2008).

. The District Court did not rule as to Jones's qualifications. Although Jones has conducted over 800 inspections of foreign vessels over seven years, including review of vessel records relating to the proper management of oily wastes, only 10 of these inspections involved potential violation of the International Convention for the Prevention of Pollution From Ships (commonly referred to as "MAR-POL,” an abbreviation for marine pollution), or the Act to Prevent Pollution from Ships ("APPS"). 33 U.S.C. § 1901 et seq. However, qualifications are to be judged according to a "liberal minimum qualification" standard, and we thus assume that Jones was qualified to testify as an expert. See Kan-nankeril v. Terminix Int’l, Inc., 128 F.3d 802, 809 (3d Cir.1997).

. The government argues that alternative hypotheses should be the basis of cross-examination and their absence should not be a basis for exclusion of the expert opinion. However, if reasonable alternative causes or explanations have not been considered, that necessarily undermines the reliability of the “reasoning by inference” — the very methodology that the government says was followed by Jones.
Accordingly, the existence and viability of other alternatives are important to the admissibility inquiry.

. The Appellees also contest at length the “systematic” nature of Jones's methodology. (Appellees’ Br. 35-39.) We agree that his manner of testing and assessing the evidence was flawed in many ways. No further discussion is necessary.

. We submit that the nature and reliability of Jones’s opinion that the oily waste was discharged into the ocean bears no resemblance to the nature and reliability of an experienced police officer's opinion as to whether certain conduct is consistent with that of drug traffickers. Thus, we disagree with the view of our dissenting colleague.