**THOMAS & BETTS CORPORATION,**
Appellant

v.

**RICHARDS MANUFACTURING COMPANY; Bleema Manufacturing Corporation; Glenn J. Luzzi**

Thomas & Betts Corporation

v.

**Richards Manufacturing Company; Bleema Manufacturing Corporation; Glenn J. Luzzi, Appellants.**

Nos. 08–3117, 08–3269.

United States Court of Appeals,
Third Circuit.

Argued: June 26, 2009.

Opinion Filed: July 30, 2009.

Kevin McNulty, Esq. (Argued), Gibbons, Newark, NJ, for Appellant/Cross–Appellee.

Steven B. Pokotilow, Esq. (Argued), Stroock, Stroock & Lavan, New York, NY, for Appellees/Cross–Appellants.

Before: BARRY, SMITH, Circuit Judges, and DuBOIS * District Judge.

* Honorable Jan E. DuBois, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION

BARRY, Circuit Judge.

This appeal arises out of a former employment relationship between plaintiff Thomas & Betts Corporation ("T & B") and defendant Glenn Luzzi. In an action commenced in 2001, T & B claimed that when Luzzi left T & B to work for a competitor, defendant Richards Manufacturing Company ("Richards"), he misappropriated information concerning the design, manufacture, and marketing of a line of underground electrical connector products, and that Richards used this information to capture a lucrative market sector that T & B had dominated for years.[1] T & B also brought breach of contract, breach of the duty of loyalty, and fraud claims against Luzzi, and tortious interference with prospective advantage and unjust enrichment claims against Richards. After an exhaustive litigation, which we will reference only as necessary to decide the issues before us, the District Court granted summary judgment for defendants on the misappropriation claim and dismissed T & B's remaining claims. Final Judgment was entered on June 18, 2008, 2008 WL 2478337. The Court subsequently denied defendants' motion for sanctions. This appeal and cross-appeal followed. We have jurisdiction to consider these appeals pursuant to 28 U.S.C. § 1291.

T & B contends before us that the District Court formulated and thereafter applied a standard by which to assess whether T & B had a protectible interest in its allegedly misappropriated information, and that that standard was wrong as a matter of New Jersey law. It contends, as well, that the Court misapplied the familiar summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure by finding facts and by failing to draw key inferences in favor of it, T & B, as the non-moving party. Finally, T & B contends that the Court erred in excluding significant portions of the testimony of its primary expert witness. Richards, on the cross-appeal, argues that the Court erred in denying the motion for sanctions.

Because we conclude that the District Court (1) applied an incorrect body of New Jersey law in evaluating T & B's misappropriation claim and (2) applied too restrictive a standard in evaluating the admissibility of T & B's expert, we will vacate the order of Final Judgment, and remand for further proceedings. We, therefore, need not discuss Rule 56 and the parties' positions as to whether its requirements were satisfied, although we commend to all involved a review of that Rule. We will affirm the order of the Court denying sanctions.

## I.

Glenn Luzzi was the Director of Engineering at T & B's Elastimold division, which manufactures, among other things, 600–amp underground oil-resistant electrical connectors, primarily for use by Consolidated Edison ("Con Ed"). In 1998, Luzzi began to explore alternate job opportunities and sought employment with Richards, a company that also manufactured electrical components. Richards told Luzzi that it would not hire him unless T & B released him from the obligations undertaken by him in his 1996 employment agreement, which contained both restrictions on his future employment and confidentiality stipulations in the event of his

1. Defendants have litigated the case jointly and, therefore, reference to "Richards" as a party refers to all defendants, including Bleema Manufacturing Corp., a company that provides employees and management services to Richards and has played no meaningful role in this litigation.

departure from T & B. By letter of December 17, 1998, T & B stated that "Thomas & Betts hereby releases you from any previous employment restrictions which you have signed," but cautioned Luzzi that, "[n]otwithstanding [this release], it is understood that you are not permitted to share or release information proprietary to Thomas & Betts—Elastimold." [2] (App. at 5281.) Luzzi joined Richards in January 1999.

It is undisputed that Luzzi retained a number of T & B documents (called the "Closet Documents") in his home after he ended his employment with T & B. These documents fall into two main categories by content: (1) financial reports, customer lists, and sales charts (the "customer data"); and (2) various product specifications, standard operating procedures, and technical drawings (the "product data"). It is also undisputed that T & B had been the sole supplier of a line of 600–amp disconnectable connector products to Con Ed for approximately twenty years,[3] but that, approximately eighteen months after Luzzi began working for Richards, Richards was able to develop a compatible product line and, in January 2001, obtained a sole-source contract from Con Ed for the products after offering them at a lower price than T & B.

Richards brought a declaratory judgment action in October 2001, seeking a declaration that it had not misappropriated T & B's trade secrets or other confidential information. T & B counterclaimed, bringing the claims set forth above.[4] In a series of successive interrogatory responses, T & B identified ten trade secrets and ninety-two discrete items of confidential information that it claimed defendants had misappropriated. The parties set forth in detail their positions as to each of these trade secrets and items of confidential information in the Final Pretrial Order ("PTO").

In its opinion of October 7, 2005, the District Court denied Richards's motion for partial summary judgment on several of T & B's counterclaims. In that opinion, the Court articulated the standard by which it would determine whether or not T & B could claim a protectible interest in each item of confidential information identified in the PTO—that is, whether the allegedly misappropriated information was, in fact, confidential. Believing that there was not a clearly-defined standard in New Jersey case law, the Court fashioned its

---

**2.** Luzzi also may have been bound by the terms of a 1978 agreement that he signed while working for a predecessor of T & B. The District Court discussed the parties' dispute as to whether the confidentiality provision of the 1978 or 1996 agreement, both, or neither, controls, but did not resolve it. (App. at 12–13 & n. 1.) We note the parties' stipulation that "T & B released Luzzi from *only* the non-compete restriction within his [employment agreement]" (App. at 18615 (emphasis added)), which suggests that Luzzi remained contractually bound not to disclose T & B's confidential information.

**3.** In 1996, Richards developed a prototype for the same type of electrical connector manufactured by T & B for Con Ed. Though the product was successfully tested in isolation, Con Ed informed Richards that, in order to be marketable as a second source, the product had to be physically and electrically compatible with the T & B products already in service, which it was not. In addition, Luzzi testified in his deposition that Con Ed approached him in 1997, in his official capacity as Elastimold's Director of Engineering, to ascertain whether Elastimold would license its design specifications to Richards to create another product supplier. Luzzi's superiors rejected Con Ed's request.

**4.** In an order dated October 28, 2005, the District Court realigned the parties to their natural pleading positions, making T & B the plaintiff and the collective Richards the defendants.

"protectibility" standard from two holdings of the Supreme Court of New Jersey.[5] In the first, *Ingersoll–Rand Co. v. Ciavatta,* 110 N.J. 609, 542 A.2d 879 (1988), the Supreme Court assessed the propriety of a species of post-employment restrictive covenants (*i.e.,* inventorship "holdover" agreements), while, in the second, *Lamorte Burns & Co. v. Walters,* 167 N.J. 285, 770 A.2d 1158 (2001), it discussed the tort of misappropriation of confidential information. The District Court's resultant test consisted of four factors: (1) the degree to which the information is generally known in the industry; (2) the level of specificity and specialized nature of the information; (3) the employer/employee relationship and the circumstances under which the employee was exposed to the information; and (4) whether the information is "current" (i.e., of current value to the employer).

In its next opinion, dated April 4, 2006, and following an extensive hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the District Court significantly limited the testimony of T & B's primary expert, Van T. Walworth. The Court found that Walworth lacked experience in the field of underground electrical connectors, and found his methodology unreliable.

In opinions dated April 26, 2007, 2007 WL 1237852, and June 18, 2008, the District Court held that T & B failed to furnish sufficient evidence to demonstrate (1) that any of its ten claimed trade secrets were, in fact, secrets, and (2) that it had a protectible interest in any of the discrete items of confidential information. On that basis alone, the Court granted summary judgment on T & B's misappropriation claim. As T & B's claims of breach of contract, breach of the duty of loyalty, and unjust enrichment were "premised on" the survival of its misappropriation claim, the Court dismissed those claims as well.[6]

■ At oral argument before us, counsel for T & B confirmed that T & B is not appealing the District Court's ruling as to its claimed trade secrets. Accordingly, with reference to T & B's appeal of the grant of summary judgment, we decide whether the Court formulated an erroneous standard, or otherwise erred in granting summary judgment for Richards, only as to its analysis of T & B's claim for the misappropriation of confidential (*i.e.,* non-trade secret) information. We exercise plenary review over the Court's grant of summary judgment. *Kossler v. Crisanti,* 564 F.3d 181, 186 (3d Cir.2009). In conducting our review, we view the underlying facts, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Fasold v. Justice,* 409 F.3d 178, 180 (3d Cir.2005).

## II.

■ As noted above, T & B argues that the District Court erred in its determination of the legal standard for a protectible interest in information under New Jersey law. Under New Jersey law, information that does not rise to the level of a trade secret may nevertheless be entitled to protection and may serve as the basis for a tort action. *Lamorte Burns,* 167 N.J. at

---

5. The District Court discussed separately the well-defined New Jersey standard for a misappropriation of *trade secrets* claim in its opinion of January 12, 2004.

6. The District Court also dismissed T & B's tortious interference claim on the ground that it was undisputed that Con Ed approached Richards as a potential second source supplier. The Court had earlier dismissed T & B's fraud claim on separate grounds in an opinion dated April 3, 2006. T & B does not challenge either dismissal here.

299, 770 A.2d 1158. In *Lamorte Burns,* an insurance company sued two former employees who admitted taking client information from the company (while they were still employed) in order to solicit those clients for their newly formed competitive business. The Supreme Court of New Jersey held as a matter of law that the information was confidential and proprietary—and, thus, legally protectible—because it was "specific information provided to defendants by their employer, in the course of employment, and for the sole purpose of servicing plaintiff's customers." *Id.* at 301, 770 A.2d 1158. The Court found persuasive that the information was not generally available to the public, that the defendants would not have been aware of the information but for their employment, that the information gave the defendants a competitive advantage over their former employer, and that defendants knew that the plaintiff had an interest in protecting the information. *Id.* It drew heavily on principles of agency law, which provide that an agent has a duty to the principal " 'not to use or to communicate information confidentially given him by the principal ... in competition with or to the injury of the principal.' " *Id.* at 300–01, 770 A.2d 1158 (quoting Restatement (Second) of Agency § 395 (1958)).[7]

The District Court understandably, albeit mistakenly, invoked case law dealing with the interpretation of post-employment restrictive covenants (commonly referred to as "non-compete agreements"), likely because the record was, and remains, unclear whether Luzzi had any forward-looking contractual obligations. *See supra* note 2. In any event, whatever obligations remained were not the sort of pernicious

temporal or geographical restraints of trade frowned upon by the Supreme Court in cases implementing New Jersey non-competition law. *See Whitmyer Bros., Inc. v. Doyle,* 58 N.J. 25, 274 A.2d 577 (1971) (temporal and geographical restraint); *Solari Indus., Inc. v. Malady,* 55 N.J. 571, 264 A.2d 53 (1970) (temporal restraint). In those cases, the Court's searching reasonableness review of non-compete clauses was designed to alleviate concerns—the hardship on the employee and the public interest in free competition, *see Whitmyer,* 58 N.J. at 33, 274 A.2d 577—that are not relevant in this case, where, whether expressed contractually or not, Luzzi had a common law obligation to maintain the secrecy of his employer's proprietary information. *Lamorte Burns,* 167 N.J. at 299, 770 A.2d 1158. Thus, in setting its standard, the District Court erred in factoring in *Ingersoll–Rand.*

■ On remand, the District Court should consider whether the allegedly misappropriated information was provided to Luzzi by T & B in the course of his employment for the sole purpose of furthering T & B's business interests. *See Lamorte Burns,* 167 N.J. at 301, 770 A.2d 1158. To answer that question, the Court should consider the following factors: (1) whether the information was generally available to the public; (2) whether Luzzi would have been aware of the information if not for his employment with T & B; (3) whether the information gave Luzzi—and, by extension, Richards—a competitive advantage vis-à-vis T & B; and (4) whether Luzzi knew that T & B had an interest in protecting the information to preserve its own competitive advantage. This inquiry

7. The more recent Restatement is not fundamentally different: "An agent has a duty (1) not to use property of the principal for the agent's own purposes or those of a third party; and (2) not to use or communicate confi-

dential information of the principal for the agent's own purposes or those of a third party." Restatement (Third) of Agency § 8.05 (2006).

does not entail a "rigorous examination of the information sought to be protected," as in trade secret law, but rather a focus on the relationship between employer and employee, the expectations of the parties, and the intended use of the information. *Id.* at 300, 770 A.2d 1158 (quoting *Roboserve Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1456 (11th Cir.1991)). Moreover, it appears to us that, unlike in trade secret law, these four factors are not to be treated as essential elements of a cause of action for the misappropriation of confidential information.

With regard to the first of the *Lamorte Burns* factors—whether the information is generally available to the public—in *Platinum Management, Inc. v. Dahms,* 285 N.J.Super. 274, 666 A.2d 1028 (Law Div. 1995), a New Jersey case cited favorably in *Lamorte Burns,* the court held that customer names were protectible as confidential information, despite the fact that they were "publicly available" in trade directories, because "the fact that they are customers of [the plaintiff]" was not publicly available. *Id.* at 295, 770 A.2d 1158; *see Lamorte Burns,* 167 N.J. at 299–300, 770 A.2d 1158. In this case, the District Court should consider that the items of confidential information cited by T & B may serve as the basis for a tort action despite the fact that many of the items of information, examined in isolation, constitute manufacturing techniques that are generally known in the industry. Even if other engineers may have known of these techniques, inferences drawn from the marketplace, where for years no other competitor could duplicate the T & B product line, suggest a fundamental public unawareness that T & B incorporated those techniques in the development and production of 600–amp underground electrical connectors.

With respect to the third of the *Lamorte Burns* factors, in evaluating whether T &

B had a protectible interest in the information, the District Court should consider that the competitive value an employer ascribes to certain information may derive solely from its relation to other information, even when, taken in isolation, that information is neither novel nor unknown. We have explicitly recognized this principle in the context of New Jersey trade secret law, *see Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 433 (3d Cir. 1982), and it is equally relevant in the confidential information context. And, importantly, the Court should consider that, at this juncture, it is asked only to determine whether there are genuine issues of material fact in dispute as to whether the information at issue is confidential and proprietary.

## III.

■ We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir.2008). We may find that the District Court abused its discretion if its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Pineda,* 520 F.3d at 243 (quoting *In re TMI Litig.,* 193 F.3d 613, 666 (3d Cir.1999)). To the extent that the Court's decision involved a legal interpretation of the Federal Rules of Evidence, however, our review is plenary. *Id.*

■ Federal Rule of Evidence 702 provides that a qualified expert witness may testify to assist the trier of fact if his testimony is based on sufficient facts or data and is the product of reliable principles and methods, and if the expert applied those principles and methods reliably to the facts of the case. Fed.R.Evid. 702;

*see Daubert,* 509 U.S. at 595, 113 S.Ct. 2786. We have interpreted Rule 702's qualification requirement liberally, and we recently reversed a district court's conclusion that an expert was unqualified. *See Pineda,* 520 F.3d at 243 (holding that an engineer with an expertise in glass could testify as to the issue of safety warnings, despite the fact that he was not experienced in the design of automobile rear liftgates (the type of glass at issue) or in the drafting of service manual instructions). We noted that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* at 244 (quoting *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 782 (3d Cir.1996)). In *Pineda,* we emphasized that the inquiry as to reliability is flexible, *id.* at 248, and that "[a]ny dispute between the parties about the *strength* of the evidence in this case should be resolved by the jury," *id.* at 249 (emphasis added).

■ The District Court significantly limited the testimony of Walworth, the expert on whom T & B primarily relied, deciding that Walworth could testify as to only: (1) general concepts within the rubber molding industry; (2) his personal observations of T & B's and Richards' processes; and (3) his observations of the materials in the case, such as design drawings, that demonstrate similarities between the processes. The Court barred Walworth from offering any testimony as to: (1) what is commonly known in the rubber molding industry; (2) what is generally done in the rubber molding industry with respect to maintaining secrecy in manufacturing operations and whether T & B's efforts were consistent with such practices; (3) whether or not Richards reverse engineered T & B's products and what it would take, or how long it would take, to reverse engineer and manufacture the products; (4) the transferability of processes regarding injection molding plastics to manufacturing the products at issue; and (5) whether the information at issue is protectible information (*i.e.,* the ultimate issue in this case).

As we held in *Pineda,* we interpret Rule 702's qualification requirement liberally and the reliability analysis is flexible. Applying this liberal standard, we conclude that, although the District Court correctly barred Walworth from testifying as to the ultimate legal issue, the Court erred in excluding the remainder of his testimony. Walworth, whose qualifications as an expert in the manufacturing and engineering of products utilizing rubber injection molding are extensive and were not in dispute, should not have been considered unqualified merely because he was not the "best qualified" expert in "the specialization that the court considers most appropriate." *See Pineda,* 520 F.3d at 244. For the same reason, Walworth's testimony would not be unhelpful to a finder of fact merely because it references the rubber molding industry generally and not the subset industry of underground electrical connector manufacturing.[8] Moreover, the Court's

---

8. For example, Walworth testified that he has participated in developing systems to maintain the secrecy of manufacturing and engineering processes for rubber molding products at various companies. The Court rejected Walworth's testimony regarding security and secrecy because what is done in the rubber molding industry is not necessarily material to what is done in the market for underground electrical connectors. It is difficult to see, however, how Walworth's expertise in the larger industry of rubber injection molding would be irrelevant and unhelpful to a finder of fact charged with analyzing a subset of the industry, particularly

concerns about Walworth's reliability—in particular, his "moving target" identification of claims and reliance on the literature in his personal library to formulate his opinion—go to the strength, not the admissibility, of his testimony. Accordingly, we will reverse the District Court's *Daubert* holding and permit Walworth's testimony, save for his testimony as to ultimate legal issue in this case.

## IV.

We review a district court's ruling on a motion for sanctions under Rule 11 for abuse of discretion.[9] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Churchill v. Star Enters.*, 183 F.3d 184, 189 (3d Cir.1999). Richards argued to the District Court that sanctions against T & B were warranted given T & B's failure to stipulate, after the Court's summary judgment ruling of April 26, 2007, that its remaining claims could not survive summary judgment based on law of the case. In denying Richards's motion, the Court expressed its frustration with the manner in which the case had been litigated, but ultimately concluded that T & B's conduct was not sanctionable. The Court did not abuse its discretion in so concluding, and we will affirm its order denying sanctions without further discussion.

## V.

For the reasons discussed above, we will vacate the District Court's order of Final Judgment entered June 18, 2008 and remand for proceedings consistent with this Opinion. We will affirm the Court's order denying defendants' motion for sanctions.

given the relatively low standard for admissibility under Rule 702.

**9.** Although before the District Court Richards sought sanctions under both Rule 11 and 28 U.S.C. § 1927, it presses only the denial of Rule 11 sanctions before us.