UNITED STATES of America, Plaintiff,

v.

25.202 ACRES OF LAND AND BUILDING AFFIXED TO THE LAND LOCATED IN the TOWN OF CHAMPLAIN, CLINTON COUNTY, NEW YORK and Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc., et al., Defendants.

No. 5:06–CV–428 (NAM/DEP).

United States District Court, N.D. New York.

March 9, 2010.

SUF ¶ 25.

Richard A. Hartunian, United States Attorney, Paula Ryan Conan, Esq., Assistant United States Attorney, Syracuse, NY, John O. Holm, Esq., United States Department of Justice, Environmental Division,

Kristin R. Muenzen, Esq., United States Department of Justice, Commercial Litigation, Washington, D.C., for Plaintiff.

Hiscock & Barclay Law Firm, David G. Burch, Jr., Esq., of counsel, Kevin R. McAuliffe, Esq., of counsel, Zimmer Law Office PLLC, Kimberly M. Zimmer, Esq., of counsel, Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

NORMAN A. MORDUE, Chief Judge:

Three motions are pending in this condemnation case concerning property owned by defendant Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc.[1] Defendant moves (Dkt. No. 42) to preclude the testimony of E. Anthony Casale, the Government's expert witness. The Government moves (Dkt. No. 43) to exclude the valuation testimony of defendant's appraiser Michael E. Ellis to the extent that Ellis relies on an income capitalization method of valuation. The Government also moves (Dkt. No. 44) to preclude valuation testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any undisclosed valuation witnesses.[2]

Upon referral, United States Magistrate Judge Gustave J. DiBianco issued a Report and Recommendation recommending that this Court:

1. deny defendant's motion (Dkt. No. 42) to preclude the valuation testimony of the Government's expert Casale;

2. grant the Government's motion (Dkt. No. 43) to preclude the testimony of Ellis to the extent that it

relies on the income capitalization method of valuation; and

3. grant the Government's motion (Dkt. No. 44) preclude valuation testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any undisclosed valuation witnesses to the extent that their testimony is based upon Ellis's income capitalization appraisal; and deny the motion to the extent that Simon Falic and Joseph W. Kearney may testify to the value of their property as owners of that property.

Defendant submitted an objection to the Report and Recommendation (Dkt. No. 85). The Government filed a response to the objection (Dkt. No. 87). Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* those parts of the Report and Recommendation to which defendant objects. Upon *de novo* review, the Court accepts and adopts Magistrate Judge DiBianco's excellent Report and Recommendation.

It is therefore

ORDERED that the Report and Recommendation (Dkt. No. 77) of United States Magistrate Judge Gustave J. DiBianco is accepted and adopted; and it is further

ORDERED that defendant's motion (Dkt. No. 42) to preclude the valuation testimony of the Government's expert E. Anthony Casale is denied; and it is further

ORDERED that the Government's motion (Dkt. No..43) to preclude the testimony of Michael E. Ellis to the extent that it

---

**1.** As did Magistrate Judge DiBianco, the Court refers to "25.202 Acres of Land and building affixed to the land located in the Town of Champlain, Clinton County, New York: and Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc., *et al.*" as "defendant."

**2.** On September 10, 2009, Magistrate Judge DiBianco dismissed the motion (Dkt. No. 44) as moot (Dkt. No. 74); however, the parties sought clarification (Dkt. Nos. 75, 76), and the Report and Recommendation addresses the motion.

relies on the income capitalization method of valuation is granted; and it is further

ORDERED that the Government's motion (Dkt. No. 44) to preclude valuation testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any undisclosed valuation witnesses is granted to the extent that all testimony based upon Michael E. Ellis's income capitalization appraisal is precluded, and denied to the extent that Simon Falic and Joseph W. Kearney, in their capacity as owners of the subject property, may testify to its value.

IT IS SO ORDERED.

## ORDER and REPORT–RECOMMENDATION

GUSTAVE J. DiBIANCO, United States Magistrate Judge.

On July 31, 2008, the Government wrote a letter to Judge Mordue regarding both parties desire to file motions to preclude expert testimony in this action. (Dkt. No. 38). On August 7, 2008, the Honorable Norman A. Mordue, Chief United States District Court Judge ordered that the proposed motions would be referred to me for Report–Recommendation. (Text Order of Aug. 7, 2008). The motions were filed simultaneously by both parties on October 15, 2008, pursuant to my scheduling order. (Dkt. Nos. 42, 43, 44). Defendant[1] argues that the court should preclude the testimony of the Government's expert witness, E. Anthony Casale and rebuttal expert, Richard Marchitelli. (Dkt. No. 42). In its motion, the Government argues that the court should preclude the testimony of defendant's proposed expert, Michael E. El-

lis to the extent that Mr. Ellis values the subject property based upon an "income capitalization" method of appraisal.[2] (Dkt. No. 43). The Government also moved to exclude the valuation testimony of John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any other "Undisclosed Valuation Witnesses." (Dkt. Nos. 44, 61).

Each party responded in opposition to the other party's motion to preclude. (Dkt. No. 48(Pl.); 50 & 52 (Def.)). Each party also filed a reply. (Dkt. Nos. 60 (Def.); 63(Pl.)). Defendant has responded in opposition to the Government's motion to exclude the testimony of John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any other "Undisclosed Valuation Witnesses." (Dkt. No. 68). Many of these documents have been sealed due to a stipulated confidentiality agreement. (Dkt. No. 25).

On April 27, 2009, this court held an oral argument/hearing on the motions to preclude proposed witnesses Casale, Ellis, and Marchitelli.[3] Defendants argue that Mr. Marchitelli's opinion is inadmissible and should not be considered. No oral argument was held regarding the Government's motion to exclude the valuation testimony of John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and any other "undisclosed" valuation witnesses.

On September 10, 2009, this court issued an order, dismissing the Government's motion to preclude the additional valuation witnesses[4] as moot. (Dkt. No. 74). The order was issued based on the court's un-

---

**1.** Although there are technically multiple defendants, the court will refer to "defendant" in the singular or as Duty Free America (DFA).

**2.** The Government does not seek to exclude Mr. Ellis's testimony regarding his "comparable sales" approach. (Dkt. No. 43 at 2).

**3.** A transcript of the hearing has been filed as Docket No. 71 in this action.

**4.** (Dkt. No. 44).

derstanding that defendant was not going to call any of the four named witnesses as *"experts"* in rendering valuation testimony. *Id.* Apparently, this court's September 10 order caused some confusion to both plaintiff and defendant. Each side has requested a "clarification" of the court's order regarding these additional proposed witnesses. (Dkt. Nos. 75, 76). This recommendation will discuss the parties' concerns about this court's September 10, 2009 order.[5]

## DISCUSSION

### 1. *Facts*

This action involves the Government's condemnation of 25.202 acres of property, located in Champlain, New York, and owned by defendant Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc. (DFA). The land was acquired by the United States for the Champlain Border Station Expansion Project. The Government acquired this land by filing a Complaint in Condemnation and Declaration of Taking dated April 4, 2006. (Dkt. Nos. 1, 3). The Complaint included a demand for jury trial on the issue of just compensation. (Dkt. No. 1 at 3).

At the time the complaint was filed, the Government deposited $143,000.00 with the court, representing the amount of "just compensation" for the defendant's property.[6] (Dkt. No. 4)(Clerk's Receipt). On April 5, 2006, the Government's ex-parte motion for immediate possession of the subject property was granted by Chief Judge Norman A. Mordue. (Dkt. Nos. 5, 6). On June 9, 2006, defendant filed a notice of appearance and jury demand, requesting a jury trial on the issue of just compensation. (Dkt. No. 9).

During pre-trial discovery, defendant designated Michael E. Ellis as its expert valuation witness. Defendant served the Government with Mr. Ellis's report. Pl. Hearing Ex. 3.[7] Mr. Ellis utilized two different approaches to valuation and found that four acres of the subject property was worth $10,300,000.00 based upon his "Income Approach to Value." *Id.* at 89. Mr. Ellis's second approach was the "Direct Sales Comparison Approach" which resulted in a value of $150,000.00 for the remaining property. *Id.* at 93.

On April 30, 2007, the Government produced a "Self–Contained Appraisal Report," authored by Anthony Casale. Pl. Hearing Ex. 2. Mr. Casale found that at the time of the taking in April of 2006, the subject property was worth $184,000.00. *Id.* at 91. On September 28, 2007, the parties served rebuttal reports, including appraisal "review" reports by both Mr.

---

**5.** The court notes that in their letter-motions, the parties also requested an extension of the time to object to this court's September 10, 2009 order, pending the court's clarification. (Dkt. Nos. 75, 76). Although the court did not address the separate request for an extension immediately, this recommendation will act as a clarification, and if the parties still wish to object, they will certainly have that opportunity. No prejudice to either party will result from this court's failure to address the extension request separately from the merits of the clarification.

**6.** The funds were later disbursed to defendants after an unopposed motion for disbursement was granted by Chief Judge Mordue on

October 4, 2006. (Dkt. Nos. 15, 17). The disbursement of the funds does not affect the parties' right to a jury trial regarding valuation, and the affidavit accompanying defendant's motion indicates that if the amount ultimately determined as the value of the property is less than the amount disbursed, defendant shall return the difference with interest. Zimmer Aff. ¶ 2 (Dkt. No. 15).

**7.** The court notes that throughout the documents filed in conjunction with these motions, there are multiple copies of many of the exhibits. For ease of referral, if an exhibit was used or included in the Hearing Exhibits, the court will cite to it there. The Hearing Exhibits are contained in binders and indexed.

Casale and Mr. Ellis. Def. Hearing Exs. M, EE. The Government also served a rebuttal report, authored by Richard Marchitelli, who reviewed Mr. Ellis's report. Pl. Hearing Ex. 1 All three expert witnesses have been deposed. Def. Hearing Exs. C, K, AA.

As stated in the Government's memorandum of law, and not disputed by the parties, the land is located "on the border of the United States and Canada on the east side of New York State Route 9 (also known as the East Service Road) at the Interstate 87 land crossing." Pl. Mem. at 3 & Ex. 1. Defendant also owns two more parcels of land near the subject property. *Id.* One of those parcels is a two acre parcel that abuts the subject property at its southwest corner, and the other parcel is a 5.87 acre parcel that is located 1300 feet south of the subject parcel on Route 9. *Id.* This 5.87 acre parcel is not adjacent to the subject property and is the location of DFA's currently operating duty-free store. *See* Marchitelli Report at 5 (PL Hearing Ex. 1). In between DFA's current store and the DFA's other two parcels is a vacant tract of land with frontage on Route 9. *Id.* There is a competing duty-free store called the "Git–N–Go" located to the south of DFA's existing store. Pl. Mem. at 3 (Dkt. No. 43).

The only issue remaining for jury determination is the value of the property that was subject to the condemnation. The issue for this court's determination is whether to recommend the exclusion of any of the proffered experts or to recommend that the district court allow the evidence and let the jury assess the testimony in determining the value of the property.

## 2. *Legal Standards*

■ The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without "just compensation." U.S. CONST., amend. V. The owner of the property is to be placed in "as good a position" as though his property had not been taken. *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). Condemnation proceedings, also known as "eminent domain" proceedings, are governed by FED.R.CIV.P. 71.1.[8] Although generally, in an eminent domain action, the court tries all issues, including the amount of compensation, in certain circumstances such as this case, the issue of value and just compensation may be tried to a jury. FED.R.CIV.P. 71.1(h)(1)(B).

A motion to preclude evidence asks the court to make a preliminary determination of the admissibility of the evidence under Federal Rule of Evidence 104. *See Castro v. City of New York*, No. 06–CV–2253, 2009 WL 2461144, *2–3, 2009 U.S. Dist. LEXIS 69723, *6 (E.D.N.Y. Aug. 10, 2009)(citing *inter alia* FED.R.EVID. 104; *Allen v. City of New York*, 466 F.Supp.2d 545, 547 (S.D.N.Y.2006)). In the case of expert testimony, the court's inquiry is controlled by Rule 702 which provides that

> if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness, qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the wit-

---

**8.** Until 2007, the Rule 71.1 was numbered 71A(h). The 2007 Amendments to the Federal Rules of Civil Procedure redesignated Rule 71A as Rule 71.1. Thus cases decided prior to the 2008 will refer to Rule 71A. *See* Advisory Committee Notes, 2007 Amendments.

ness has applied the principles and methods reliably to the facts of the case. FED.R.EVID. 702. If the court determines that an expert's testimony fails to meet these standards, then it should exclude the evidence. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142–44, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

In this case, both parties intend to establish the value of the subject property through expert testimony. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence imposes a "special obligation" on the trial court to make sure that any and all *scientific testimony* is both relevant and reliable.[9] In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court extended this "basic gatekeeping" obligation to apply to *all expert testimony.* The Court in *Kumho,* quoting extensively from *Daubert,* stated that Rule 702 establishes a "standard of evidentiary reliability," and when the expert's factual basis, data, principles, methods, or their application are sufficiently called into question, the trial judge must determine whether the testimony " 'has a reliable basis in the knowledge and expertise of [the relevant] discipline.' " 526 U.S. at 149, 119 S.Ct. 1167 (quoting *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786)(alteration in original).

■ The Third Circuit has referred to the Rule 702 requirements as representing the "trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Calhoun v. Yamaha Motor Corp. U.S.A.,* 350 F.3d 316, 321 (3d Cir.2003)(citing *Schneider v. Fried,* 320 F.3d 396, 405 (3d

Cir.2003)). The proponent of the testimony has the burden to show by a preponderance that the evidence is relevant and reliable. *Housing Works, Inc. v. Turner,* 362 F.Supp.2d 434, 447 (S.D.N.Y.2005)(citing *inter alia Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

■ It has also been held that in condemnation actions under Rule 71.1, the trial court must screen evidence before it is heard by the jury and must exclude "any valuation evidence that is predicated on an overly speculative use of the property." *United States v. 33.92536 Acres of Land,* Nos. 98–1164, 98–2344, 2007 U.S. Dist. LEXIS 97146, *11–12 (D.P.R. April 24, 2007)(citing *United States v. Certain Land Situated in the City of Detroit,* 450 F.3d 205, 211 (6th Cir.2006); *United States v. 320.0 Acres of Land,* 605 F.2d 762, 814–15 (5th Cir.1979)), *Report Recommendation adopted,* 2008 WL 2550586, 2008 U.S. Dist. LEXIS 48910 (D.P.R. June 13, 2008). The landowner bears the burden of proof to establish just compensation for the condemned property. *Id.* at *10 (citing *Nat'l R.R. Passenger Corp. v. Certain Temp. Easements,* 357 F.3d 36, 39 (1st Cir.2004)). It is against this backdrop that the court will now consider the motions to preclude in this case.

## A. Qualifications

■ When considering the qualification requirement, the court must determine whether the expert has "specialized experience in a given field." *Steffy v. Home Depot, Inc.,* No. 1:06–CV–2227, 2008 WL 5189505, *2, 2008 U.S. Dist. LEXIS 99624, *4 (M.D.Pa. Dec. 10, 2008)(citing *Pineda v.*

---

**9.** The admission of evidence in general is governed by Rules 402 and 403 of the Federal Rules of Evidence. Rule 402 provides that evidence must be relevant to be admissible, and Rule 403 permits the exclusion of even relevant evidence if, *inter alia,* its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or the danger of misleading the jury. FED.R.EVID. 402, 403.

*Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir.2008)). However, this requirement has been interpreted liberally, and " 'a broad range of knowledge, skills, and training qualify an expert.' " *Pineda*, 520 F.3d at 244 (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741–42 (3d Cir. 1994)); *Flemmings v. Merck & Co.*, MDL No. 1789, 1:06–CV–7631, 2009 U.S. Dist. LEXIS 109336, *14 (S.D.N.Y. Nov. 23, 2009).

■ The court may not exclude an expert simply because he or she is not the "best qualified" or because the proposed expert does not have the most appropriate specialization in the field. *Pineda*, 520 F.3d at 244 (citations omitted). Courts in the Second Circuit have also interpreted the expert qualification requirement liberally. *Milliman v. Mitsubishi Caterpillar Forklift Am., Inc.*, 594 F.Supp.2d 230, 236 (N.D.N.Y.2009); *Canino v. HRP, Inc.*, 105 F.Supp.2d 21, 27 (N.D.N.Y.2000). If the proffered expert has required education and experience in a "relevant field," the expert will not be barred from testifying "merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit." *Id.* (citing *Canino*, *supra* ).

In this case, defendant's first argument is that the court should preclude the expert testimony of Mr. Casale and Mr. Marchitelli because both appraisers lack knowledge and experience regarding the duty-free industry and have never appraised a duty-free store. Defendant does not challenge either witness's qualifications as an appraiser of real estate in general. Mr. Casale's qualifications are listed in his report. Pl. Hearing Ex. 2 at 110.

■ A review of Mr. Casale's qualifications as an appraiser shows that he is a New York State Certified General Real Estate Appraiser and an Associate Member of the Appraisal Institute. *Id.* He has listed his education and appraisal related coursework. *Id.* He has been an instructor on various subjects relating to appraisal of real estate, and has completed course work including "Advanced Income Capitalization," "Highest and Best Use Analysis," and "Advanced Sales Comparison and Cost Approaches." *Id.* He has been an appraiser since 1993, and he has extensive general as well as eminent domain experience. *Id.* Based upon well-settled case law and Mr. Casale's extensive experience, defendant cannot seriously dispute Mr. Casale's qualifications as an expert in the appraisal of real estate.

■ Mr. Marchitelli's qualifications are listed at the end of his report. Pl. Hearing Ex. 1. He is also a New York State Certified General Real Estate Appraiser. He has an MAI[10] designation from the Appraisal Institute. *Id.* This court will not repeat the extensive qualifications held by Mr. Marchitelli, except to state that he has been valuing properties since 1969 and has an extensive list of types of property that he has valued. *Id.* His qualifications indicate that he has been an expert witness in various federal and state courts, is an instructor at the New York University Masters of Science in Real Estate Program, has received awards, and has an extensive list of presentations and publications. This court finds that the defendant's challenge to Mr. Marchitelli's qualifications cannot succeed.

---

**10.** MAI stands for "Member, Appraisal Institute." The MAI designation is held by appraisers who are experienced in the valuation and evaluation of commercial, industrial, residential, and other types of properties and who advise clients on real estate investment decisions. *http://appraisalinstitute.org/membership*. There is a substantial list of courses required for such a designation. *http://appraisal institute.org/designations/Mai*.

Even assuming that neither expert ever appraised a duty-free store, this would not be sufficient to preclude their testimony. First, as stated above, the expert designation has been interpreted liberally, and there is no question that both of these men are qualified as experts in the "field" of real estate appraisal and valuation. Both of these individuals have appraised all types of commercial and industrial property. While the concept of a duty-free store, its proximity and relationship to the border, and its specific requirements may be unusual, there is no indication that these experts did not understand the issues. Further, and perhaps just as important, as will be discussed below, these individuals were not appraising a "duty-free store," rather Mr. Casale was appraising vacant land that could have been used as a duty-free store,[11] among other commercial uses. Mr. Marchitelli's report was not an "appraisal," but a review of Mr. Ellis's report.

## B. Reliability and Fit

■■■ The measure of compensation is the value of the property at the time of the taking. *United States v. Certain Land Situated in the City of Detroit*, 148 F.Supp.2d 863, 870 (D.Mich.2001). The owner of the property is entitled to receive " 'what a willing buyer would pay in cash to a willing seller.' " *Id.* (citing *inter alia United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943)). Many factors affect property value, and courts have adopted a "flexible" approach to determining just compensation, based upon the facts and circumstances of each case. *Id.* (citing *United States v. Fuller*, 409 U.S.

488, 490, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973)). The owner is entitled to be placed in as good a financial position as if the property had not been taken. *Olson v. United States*, 292 U.S. at 255, 54 S.Ct. 704.

There are various ways to value real property. Primary among those methods are the cost approach, the income approach,[12] and the market approach (also known as the sales comparison approach). *Marseilles Hydro Power, LLC v. Marseilles Land and Water Corp.*, No. 04 C 1427, 2004 WL 2931293, *5, 2004 U.S. Dist. LEXIS 25276, *15 (N.D.Ill. Dec. 10, 2004). *See also* APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 62–64 (12th Ed. 2001)(Pl. Hearing Ex. 5). In this case, Mr. Casale used the sales comparison approach, and Mr. Ellis used a combination of the income approach and the sales comparison approach. Pl. Hearing Exs. 2, 3.

The sales comparison approach is the most common technique for valuing land. THE APPRAISAL OF REAL ESTATE 337. It has been held that comparable sales are the "best evidence of value." *United States v. Whitehurst*, 337 F.2d 765, 775 (4th Cir.1964)(citing cases). In this approach, data is collected from the sales of similar parcels of land. THE APPRAISAL OF REAL ESTATE 337. The data is then analyzed, compared, and adjusted to provide a value for the land being appraised. *Id.* There are various factors involved in the analysis and adjustment of the data that may affect the value of the property. *See id.* at 417.

The income capitalization approach involves analyzing a "property's capacity to

---

**11.** This court makes no finding that either of these individuals would have been unqualified to value a duty-free store. The court is simply commenting that the land was vacant.

**12.** The income approach is also referred to as "income capitalization." APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 62 (12th Ed.

2001). "One or more of these approaches are used in all estimations of value; the approaches employed depend on the type of property, the intended use of the appraisal, the identified scope of work, and the quality and quantity of data available for analysis." *Id.*

generate future benefits and capitaliz[ing] the income into an indication of present value." *Id.* at 471. The Appraisal of Real Estate text list three types of income capitalization. THE APPRAISAL OF REAL ESTATE at 336–37. Two of those methods are referred to as "Direct Capitalization" techniques, and one is referred to as "Yield Capitalization." *Id.* The two "direct" methods are called "Land Residual Technique" and "Ground Rent Capitalization." *Id.* at 336. The Yield Capitalization approach is referred to as "Discounted Cash Flow Analysis." *Id.* at 337. This Discounted Cash Flow Analysis is used when vacant land has the potential for development. *Id.* In this case, Mr. Ellis used a rental analysis. Ellis Appraisal at 56.

▆▆▆ An essential component in determining the value of real property is a determination of its "highest and best use." *See Steffy v. Home Depot,* 2008 WL 5189505 at *7–8, 2008 U.S. Dist. LEXIS 99624 at *20. *See also* THE APPRAISAL OF REAL ESTATE 305. Highest and best use is defined as the "reasonably probable and legal use of vacant land or an improved property that is physically possible, legally permissible, appropriately supported, financially feasible, and that results in the highest value." *Id. See also* APPRAISAL INSTITUTE, THE DICTIONARY OF REAL ESTATE 135 (4th Ed. 2002). In the valuation process, the concept of highest and best use is employed before *any* of the three methods of valuation are applied. *Id.* at 51 (fig. 4.1). Thus, whether using a sales comparison approach or an income approach to valuation, the appraiser must determine the property's highest and best use. *Id.* The highest and best use is determined "as though vacant" and "as improved." THE APPRAISAL OF REAL ESTATE 305–307.

In this case, Mr. Ellis found that the highest and best use for the property was as "mixed use development," including a duty-free store. Pl. Hearing Ex. 3 at 53; Ellis Depo. at 87 (Pl. Hearing Ex. 4). At his deposition, Mr. Ellis stated that he was considering approximately four of the 25.202 acres as the "duty free" use and the rest of the property for the other uses. Ellis Depo. at 87–88. Mr. Ellis found that a buyer would only need four of the 25.202 acres for a duty-free store, so the rest must be "something other than duty free under the control of the duty free store so they can still protect themselves." *Id.* at 88.

Mr. Casale found that the highest and best use of the subject property, as vacant, is for low intensity industrial/commercial development related to border activity. Pl. Hearing Ex. 2 at 77. The highest and best use of the property "as improved" is for "demolition and redevelopment." *Id.* at 78. The reason behind this finding is that because of the dilapidated condition of the structure that was on the property,[13] most market participants would consider demolition of the structure in order to maximize any alternatives for commercial or industrial development. *Id.* Mr. Casale did not rule out a duty-free store use as one of the "border related" businesses that *could* exist on the property. Casale Depo. at 70–75 (Def. Hearing Ex. K).

Although there are some differences between the appraisers regarding the highest and best use of the property, the real issue is the subsequent analysis. Mr. Casale used the comparable sales approach to valuing real estate. He chose six sales of real property with the same or similar highest and best use, and made his determination based upon these comparable sales. Casale Appraisal at 82 (Pl. Hearing Ex. 2). Mr. Casale also considered the 25.202 acres of land as the entire parcel,

---

**13.** The "improvement" that was on the property at the time of the taking did not contribute any value due to its condition. Neither party disputes this fact.

with the Government engaging in a "complete taking" of the entire parcel. *Id.* at 19.

■ Mr. Ellis considered a "larger parcel," consisting of *all* the parcels owned by DFA, *including* the parcel upon which the current duty-free store was, and still is, currently operating. *See* Ellis Appraisal at 3–4 (Pl. Hearing Ex. 3). Mr. Ellis viewed the Government's acquisition as a "partial taking." *Id.* Based upon this assumption, Mr. Ellis performed an income capitalization valuation, by determining the yearly income from an operating duty-free store. Mr. Ellis based the income upon an analysis of "ground rents," which consist of a percentage of the store's sales income. *Id.* at 57–69. Mr. Ellis reasoned that many of the properties upon which duty-free stores are located are leased, and the income from those leases is based upon a percentage of the total sales. *Id.* After comparing nine duty free stores and determining what a yearly income [14] would be, Mr. Ellis found a capitalization rate,[15] and used a formula to determine present value based upon the net operating income and the capitalization rate. Mr. Ellis determined that the value would be in the range of $10,000,000.00 to $10,303,000.00 based on this formula. *Id.* at 89.

Mr. Ellis also determined that only four of the 25.202 acres would be needed for the duty free store, and he proceeded to determine the value of the remaining land using the sales comparison approach. *Id.* at 91–93. Based on the sales comparison approach, he determined that the remaining land was worth $150,000.00. *Id.* at 93. He added the value of the "remaining" land to the value of the four acres that could be used for a duty free store. *Id.* However, in his conclusion he "rounded"

the figure to $10,300,000.00 "to reflect the lack of precision associated with value opinions." *Id.* at 94. Basically, Mr. Ellis determined that the highest and best use of four acres of the property was a duty-free store and proceeded to value the land as if there were a duty free store on it that was currently operating.

In his summary, Mr. Ellis stated that the estimated value of defendant's property "before the taking" was $10,300,000.00. *Id.* at 4. Mr. Ellis then stated that the "effect" of the taking was to deprive DFA of "a potential future superior site for a duty free store" and "the assurance that another operator could not open in a location that could seriously damage their current business location." *Id.* He concluded that this was "tantamount to an adverse change in the utility and desirability of what is left for [DFA] after the taking." *Id.* at 4–5. Then, Mr. Ellis stated that the "loss in value" was $10,300,000.00. *Id.* at 5.

■ Although income capitalization is a valid and reliable methodology for the appraisal of real estate in certain cases, it should be used when there are *no* comparable sales and market value must be estimated. *United States v. 47.14 Acres of Land, More or Less, Situate in Polk County, State of Iowa,* 674 F.2d 722, 725–26 (8th Cir.1982). In *Whitehurst,* the court held that great care must be taken when determining value by income capitalization because "such valuations can reach wonderland proportions." *Id.* at 726. Capitalization of future income should not be used when the future use or demand for that use is speculative. *United States v. 75.13 Acres of Land,* 693 F.2d at 816. The mere physical adaptability to a given use is

---

**14.** The estimated yearly rental income was determined by taking twenty percent of the hypothetical store's gross retail sales. Ellis Appraisal at 87 (Pl. Hearing Ex. 2).

**15.** Mr. Ellis determined the capitalization rate by referring to a publication entitled the KORPACZ REAL ESTATE INVESTOR SURVEY. Ellis Appraisal at 87–88 (Pl. Hearing Ex. 3).

insufficient to invoke the capitalization method, and the landowner must show that "an income producing market existed at the date of the taking or will exist in the reasonably near future." *Id.*

█ In *Marseilles Hydro Power, LLC,* the court held that the court should not consider the *potential* income from a *potential* business as an indication of the property's fair market value. 2004 WL 2931293 at *5, 2004 U.S. Dist. LEXIS 25276 at *15 (citing *Winooski Hydroelectric Co. v. Five Acres of Land,* 769 F.2d 79, 83 (2d Cir.1985)). A potential future use of condemned property should not be considered as the present measure of value. *United States v. 1,291.83 Acres of Land,* 411 F.2d 1081, 1084 (6th Cir.1969) (citing *inter alia United States v. Meadow Brook Club,* 259 F.2d 41, 45 (2d Cir.1958), *cert. denied,* 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958)). A potential use should be considered only to the extent that the prospect of demand for such use would have affected the price that a willing buyer would have offered for the property just prior to the taking. *Id.* Speculative and remote possibilities cannot become a guide for the ascertainment of value. *Id.*

█ The highest and best use of a property may increase the value of vacant land because a buyer may pay more for property that is capable of being developed into a profitable operation. However, if there is no currently operating business, it would be "improper to value the property as if it were *actually being used* for the more valuable purpose." *United States v. Meadow Brook Club,* 259 F.2d at 45 (quoting *Olson,* 292 U.S. at 255, 54 S.Ct. 704) (emphasis added). Thus, even though the highest and best use may include a duty-free store, if there is no currently operating store on the property, an income approach should not be used, and is not a reliable method of appraising the land. Thus, although income capitalization is in

certain circumstances a reliable method of appraisal, Mr. Ellis did not apply the method reliably to the facts of *this* case.

Defendant relies heavily on *United States v. Certain Land Situated in the City of Detroit* (referred to at the hearing as the Lubienski case) for the proposition that a determination of value may take into account potential uses of the property, and that the Court may admit evidence of income capitalization. It is true that fair market value takes into account the highest and best use of a property even if that property is not being currently used for that purpose. 148 F.Supp.2d at 871 (citing *Olson v. United States,* 292 U.S. at 255, 54 S.Ct. 704). However, to stretch this proposition into the claim that the appraisal can be based on the income from that potential use is not supported by the facts in *this* case or by the case cited by defendant.

In the Lubienski case, the Government condemned land upon which a duty free store was *currently operating. Id.* at 866. Defendants in Lubienski sought to introduce evidence of the "on-going business value of their operation of a duty free store on the subject property." *Id.* at 865. The Government moved to preclude this evidence. *Id.* at 869. The Government argued that Lubienski should not be able to introduce the evidence because the right to operate a duty free store was not transferable with the land, and because it was unclear whether Customs would approve the use of the property as a duty-free store for the hypothetical purchaser. Thus, the Government argued that the fact-finder should not be allowed to consider the *continued use* of the property as a duty free store. *Id.* at 871.

The court stated that "in default of more direct evidence of sale value, the present value of *clearly to be expected future earnings may be considered." Id.* at 880. The court also noted that valuing commercial

property in terms of capitalized earnings is allowed when the market value is too difficult to find or when a market value application would result in "manifest injustice." *Id.* The court in the Lubienski case was also very concerned with the Government's tactics in that case. Initially, the Government indicated that it was only going to take a "small sliver" of the defendant's parking lot, but ultimately decided to take the whole parcel which would effectively **have put the company out of business and benefit its only competitor.** *See id.* at 864–869, 880–81. The court stated that "[a]pplying the basic equitable principles of fairness, the Court finds that, in this case, the value of Defendants' duty-free business must be considered in determining the amount of just compensation owed by the Government." [16] *Id.* at 880.

This case contains **none** of the facts that contributed to the equitable consideration involved in the Lubienski case. The Government in this case has **not** taken defendant's business and has **not** effectively put the defendant out of business. The Government took twenty five acres of **vacant** land in which the only structure was an old building that had not been used in years and whose demolition was necessary in any event. Although Mr. Ellis stated that the subject property was a superior location for a duty-free store, there is absolutely **no support** for this statement. The fact that defendant's store was **not** built on the subject property, and there were no plans to move the store to the subject property, show that this statement is inaccurate and misleading. *See* Casale Appraisal at 66 (Pl. Hearing Ex. 2)(citing defendant's response to interrogatories indicating no plans for the subject property at the time of taking). The defendant's current store

location is close to Exit 43, the last highway exit before the border. In order to access a duty-free store on the subject property, a potential purchaser would have to exit the highway, pass two duty free-stores and proceed to the third store furthest away from the exit.

Although not exactly on point, in *United States v. 33.92536 Acres of Land,* the court excluded evidence of the potential income stream from the extraction of mineral deposits from the condemned property because evidence of sales of comparable properties located nearby the subject property were available. 2007 U.S. Dist. LEXIS 97146 Report–Recommendation at *31–32. The court stated that all of the comparable sales contained mineral deposits. *Id.* The court stated that where evidence of comparable sales exists, courts have refused to consider evidence of capitalization of income. *Id.* at *30–31 (citations omitted).

In this case, although defendant disagrees,[17] there are comparable sales of the subject property as noted in Mr. Casale's appraisal. The court would also point out that the parcel immediately adjacent to, and south of, the subject property with frontage on the East Service Road has been on the market for approximately ten years at a substantially lower price than that proposed by defendant for the subject parcel. HT at 45, 49–50. The principle of "substitution" states that when several similar properties are available, the one with the lowest price attracts the greatest demand. THE APPRAISAL OF REAL ESTATE at 38. In this case, since there is a parcel of land for sale on the same side of the highway as the subject property and closer to the exit for substantially less money, it

---

16. Ultimately, the case was settled for a substantial amount of money. (Dkt. No. 42, Ex. J).

17. Hearing Transcript (HT) at 24. Defense counsel states that there are no comparable sales of "Duty Free Property." *Id.*

is not logical that a purchaser would by-pass that property to spend substantially more for the subject property.

In his use of a hypothetical income valuation, Mr. Ellis has determined that there was a "larger parcel," including the current duty-free store, and that the Government's condemnation constituted a "partial" taking. Ellis Depo. at 66. He defined the "larger parcel" as including lands that may or may not be contiguous, having a "common use" or a "common effect" on one another. *Id.* at 71. In this case, Mr. Ellis found that the subject property had an "effect" on the current store because defendant held the subject property to prevent competition. *Id.* at 72. Mr. Ellis stated that because the condemnation was a "partial taking," he also considered "severance damages." *Id.* at 77. He defined severance damages by stating that the defendant would be entitled to compensation, not only for the fair market value of the interest actually taken by the Government, but also for additional amounts that would be equivalent to the *diminution of value of any other land* that was not taken. *Id.* at 78.

▆▆▆▆▆ In a "partial taking" case, the measure of damages is the difference between the value of the land before the taking and its value after the taking. *United States v. 33.92356 Acres of Land,* 585 F.3d 1, 9 (1st Cir.2009) (citations omitted). This is also referred to as the "before and after method." *Id.* The identity of the "parent tract" depends on whether there is a unity of use between the parcels. *Id.* at 7. "[W]hether the parcels are a 'single tract' for takings purposes 'does not depend upon artificial things like boundaries between tracts ... whether the owner acquired his land in one transaction ... [or] whether holdings are physically con-

tiguous.' The key question is whether the parcels have an 'integrated use.' " *Id.* (quoting *Baetjer v. U.S.,* 143 F.2d 391, 394–95 (1st Cir.1944))(alterations in original). Unity of use is an issue for the court to decide. *Id.* (citing Fᴇᴅ.R.Cɪᴠ.P. 71.1(h); *United States v. Reynolds,* 397 U.S. 14, 19, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970)).

Consistent with the above case law, in this case, Mr. Casale ·testified that in a "larger parcel" analysis, the use of the parcels must be ***integrated*** so that the taking of one will have an effect on the use of the remaining parcel. Casale Depo. at 76–77. Although defendant contends that neither Mr. Casale nor Mr. Marchitelli had the knowledge or experience of the duty-free business to understand the application of the larger parcel rule, it is unclear from any of the evidence how the Government's taking of the 25.202 acres of vacant land had any effect on the value of defendant's currently operating store. There is no evidence that defendant was planning on moving its store to the subject property.[18] There is no indication that the vacant land was being used for any purpose connected with operating the duty free business, and to the extent that Mr. Ellis states that the property was being "held" to prevent competition, there is no indication that the Government plans to lease the property, or the alleged four acres of the property that can be used for a duty free store to any competitor.

In fact, a review of Mr. Ellis's appraisal shows that although he estimated a value "before" the taking, he did not estimate a value "after" the taking, rather he simply listed a "loss of value." Ellis Appraisal at 5. Thus, it is unclear how the taking of the subject property affected the value of the defendant's remaining land. At the hear-

---

**18.** In fact, at the hearing, Government counsel noted that there was a duty-free store on the subject property, and that the store was moved to its current location because it was superior to the prior location due to its proximity to the exit. HT at 44.

ing, defense counsel stated that Mr. Ellis did not do a "before and after" analysis, rather he did a "larger parcel" analysis. HT at 32.

However, at Mr. Ellis's deposition, he stated that because the Government engaged in a partial taking, Mr. Ellis considered severance damages. Ellis Depo. at 77. The concept of severance damages is included in a "before and after" analysis. *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.1999). In this case, Mr. Ellis stated that the defendant was entitled to compensation not only for the fair market value of the interest actually taken, but also for additional amounts as will be equivalent to the diminution "if any" in value of the land that remained. *Id.* at 78. Although his testimony sounds very much like a "before and after" analysis, Mr. Ellis did not provide an estimate for the value of the "remainder" of the property, and apparently did not determine that there were any "severance" damages. Ellis Depo. at 83.

A recent case from California is instructive. *See United States v. 12.94 Acres of Land*, No. Civ. S–07–2172, 2009 WL 4828749, *5–6, 2009 U.S. Dist. LEXIS 114581, *15–17 (E.D.Cal. Dec. 9, 2009). In *United States v. 12.94 Acres of Land*, the court stated that in a proper "larger parcel" analysis [19], the appraiser determines the value of the larger parcel and then determines the value of the "remainder parcel" after the taking. *Id.* The just compensation is then determined by subtracting the value of the remainder from the value of the total. *Id.* The court found that in such an analysis it was error to analyze the value of the subject land separately from the total. *Id.*

In this case, whether defendant uses "before and after" or "larger parcel" ter-

minology, Mr. Ellis did exactly what the court in *United States v. 12.94 Acres of Land* held was improper. It is unclear what the basis was for Mr. Ellis's analysis. If, in fact, he engaged in a larger parcel analysis, it is unclear what he believes the "remaining" parcel is worth. In a "larger parcel" analysis he would have to calculate the value of the remaining property in order to subtract the value of the remainder from the value of the total. While using the term "larger parcel" to justify including the currently operating duty-free store in a determination of the value of the total, Mr. Ellis appears to then have simply taken the subject property and valued it as a separate parcel, using the income capitalization method and basing his stabilized income and net operating income on the income of the existing store in addition to other currently operating duty-free stores.

In Mr. Ellis's appraisal summary, he states that the estimated value **before the taking** of all three parcels, including the subject property and existing store is $10,300,000.00. Ellis Appraisal at 3–4. Then, under the heading "After the Taking," he states that the "loss in value" is $10,300,000.00. *Id.* at 5. This statement would mean that the remaining parcels, including the current store had no value after the taking. At the hearing, defense counsel stated that the $10.3 million dollars was the amount that the company lost because they could either have put another store on the subject property or could have prevented a competitor from entering the market. HT at 30.

Then defense counsel stated that the properties "jointly held" by DFA were worth $10.3 million dollars "more" the day before the taking than after the Government took the subject property. HT at 32.

---

19. The court used the "larger parcel" language interchangeably with a "before and after" analysis. 2009 WL 4828749 at *5–6, 2009 U.S. Dist. LEXIS 114581 at *15–17.

Defendant concludes that Mr. Ellis found that if defendant were going to sell its "combined holdings, those larger parcels and the current store and the property they own for protection they could get $10.3 million dollars more." *Id.* However, Mr. Ellis clearly states that all the properties *together* are worth $10.3 million dollars, and then states that the "loss" in value after the taking is $10.3 million dollars. This cannot be true without arguing that the remaining property has no value. That clearly is an incorrect assumption.

The Government also challenges the way that Mr. Ellis conducted his income capitalization analysis, even assuming that an income approach were a correct method of valuing the subject property. The Government argues that Mr. Ellis used a direct capitalization approach and assumed approximately four million dollars of income existing on the day of the taking. However, income does not exist on the day of taking if the land is a vacant property. There was no adjustment for the lack of water and sewer service that would have to obtained prior to anyone earning income on the land. There was no adjustment for the time that it would take to put a duty-free store on the property or the time that it might take to obtain the necessary permits to operate a duty-free store even if the Government would ultimately issue those permits. There was no discussion of the cost of demolishing the building that existed on the land. Mr. Ellis also did not consider the fact that the current duty-free store was moved *from* the subject property. The current store is closer to the highway exit than the subject property. There was also no consideration of the

effect of a hypothetical third duty-free store on Mr. Ellis's income analysis.[20]

Interestingly enough, Mr. Ellis engaged in a comparable sales analysis of the remainder of the subject property after he determined that four of the twenty five acres would be a duty-free store. In his comparable sales analysis, Mr. Ellis obtained almost the same results as Mr. Casale's comparable sales analysis of the entire subject parcel. The court must point out that its function is *not* to compare the results obtained by the two appraisers, but to determine whether to recommend preclusion of one or the other of the experts because his methodology and consequently his testimony does not meet the standard for relevance and reliability.

■ It is critical that an expert's analysis be reliable at every step. *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002). The reliability analysis applies to all aspects of the expert's testimony, including methodology, the facts underlying the opinion, and the link between the facts and the conclusion. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir.1999). In this case, although the income capitalization approach is an accepted methodology, it is not applicable and has been applied inappropriately to the facts of this case.

Based on all the evidence and arguments presented, this court finds that Mr. Ellis's methodology cannot meet the standard of reliability and fit and should be precluded to the extent that Mr. Ellis relies upon income capitalization for a determination of the value of the subject property. There is danger that this testimony would confuse, rather than help the jury.

20. The Government argued that if Mr. Ellis were going to do an "income" analysis, it should have been based on a "Yield Capitalization" approach in which takes costs into consideration when income will not be stabilized until development of the highest and best use is completed. Hearing Transcript at 60–62 (citing THE APPRAISAL OF REAL ESTATE at 529, 646).

The Government's motion to preclude should therefore be Granted. Defendant's counter-argument that the court should exclude Mr. Casale's testimony should be denied.

Defendants also argue that Mr. Marchitelli's testimony should be excluded both substantively and procedurally. The court would point out, however, that Mr. Marchitelli was hired by the Government as a "rebuttal" expert to review Mr. Ellis's report. If Mr. Ellis's testimony regarding the income capitalization method is excluded, the Government may not require Mr. Marchitelli's review.

### 3. Valuation Testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, "and Any Undisclosed Valuation Witnesses".

As stated above, this court issued an order dismissing the Government's motion to preclude the valuation testimony by the above individuals. This court relied upon the defendant's statement that it was not going to produce these individuals as "experts," but rather as fact witnesses. Mr. Zurcher and Mr. Couri testified at their depositions that they do *not* have any opinion as to the value of the subject property. Zurcher Depo. at 90. (Pl. Ex. 10); Couri Depo. at 90–92 (Pl. Ex. 11). Thus, clearly, they will not be testifying as experts and will not be testifying as to the value of the property.

This court further found that Mr. Falic is the Chairman of defendant Duty Free America (DFA) and testified at his deposition that he based his statement of value upon the opinion of defendant's expert, Michael Ellis. Falic Depo. at 69 (Pl. Ex. at 69–76). Mr. Kearney, the Senior Vice President of DFA, also relied in part on Mr. Ellis's appraisal. Kearney Depo. at 103, 109–110 (Pl. Ex. 9). In it decision, this court noted that it was considering the separate motion ·to preclude Mr. Ellis's

testimony. This court noted that if the court should ultimately recommend preclusion, and the District Court approved the recommendation, then neither the valuation testimony of Mr. Falic nor that of Mr. Kearney, to the extent that either relied upon Mr. Ellis's appraisal would be admissible.

Apparently, the parties were confused by this court's order and requested clarification. Because this court has now made its ultimate recommendation regarding the central preclusion issue, the court will restate and incorporate its prior decision into this recommendation, and the parties will have an opportunity to object to the entire recommendation.

In its prior order, this court stated that in condemnation cases, the landowner has the burden of establishing the value of the property. *United States v. 10,031.98 Acres of Land,* 850 F.2d 634, 637–38 (10 Cir.1988)(quoting *United States v. 158.24 Acres of Land,* 696 F.2d 559, 564 (8th Cir.1982)). The court has an independent obligation to "a reasonable extent" to make sure that the landowner's claim is based upon "competent evidence." *Id.* Both sides agree that an owner of property may testify as to its value because the owner is presumed to have "special knowledge" of the property. *United States v. 10,031.98 Acres of Land,* 850 F.2d at 636 (quoting *United States v. Sowards,* 370 F.2d 87, 92 (10th Cir.1966)). The owner may testify without further qualification. *Id.*

In testifying as to the value of the property, the owner is "entitled to the privileges of a testifying expert," even if the owner's testimony is based in part on hearsay. *Id.* (citing *inter alia LaCombe v. A–T–O, Inc.,* 679 F.2d 431, 434 n. 4 (5th Cir.1982)). *See also Southeast Supply Header, LLC v. 46.25 Acres of Land,* No. 07–CV–216, 2008 U.S. Dist. LEXIS 21363, *4 (S.D.Miss. Feb. 27, 2008). The privi-

lege accorded to the owner of a property is extended to designated officers of a corporate owner. *United States v. 10,031.98 Acres of Land,* 850 F.2d at 639 n. 4 (citing *inter alia Robinson v. Watts Detective Agency,* 685 F.2d 729 (1st Cir.1982)).

In *United States v. 10,031.98 Acres of Land,* the court also stated that, notwithstanding the general rule allowing owners to testify regarding value, there must be some basis for the landowner's testimony, and the court may determine "that the landowner's testimony *alone* is insufficient to support a verdict" when that testimony has no probative value. *Id.* at 637. "Even in such cases the court cannot prevent the owner from testifying as to value," however, "it can prevent the case from going to the jury." *Id.* at 641. Relying on *LaCombe,* the court in *United States v. 10,-031.98* held that the basis of the owner's testimony goes to its weight, *not its admissibility. Id.* at 640. *See also Shane v. Shane,* 891 F.2d 976, 982 (1st Cir.1989) (accuracy of an owner's testimony goes to the weight, not the admissibility of the evidence).

In *Southeast Supply Header, LLC,* the court stated that the owner's testimony as to value may not be based upon " 'naked conjecture or solely speculative factors.' " 2008 U.S. Dist. LEXIS 21363 at *4 (citing *King v. Ames,* 179 F.3d 370, 376 (5th Cir.1999)). Finally, the Federal Rules do not permit testimony by the owner that repeats the opinion of an expert witness that the court has previously excluded. *Id.* at *5. *See also United States v. 68.94 Acres of Land,* 918 F.2d 389, 397–98 (3d Cir.1990) (landowner may not indirectly introduce through her testimony, the opinion of an expert whose testimony was earlier precluded by the court).

 The court assumes that neither of the individuals who testified at their depo-

sitions that they had no opinion as to the value of the subject property will be testifying as to value. They may testify as fact witnesses on any other issues. This court has recommended precluding Mr. Ellis's appraisal to the extent that it relies upon an income capitalization method. Thus, if the court adopts this recommendation, Mr. Kearney and Mr. Falic, *may testify as to the value of the property to the extent that they do not rely upon Mr. Ellis's income capitalization appraisal.*

It is unclear who "undisclosed valuation witnesses" might be. There was no indication that defendant was attempting to introduce other witnesses and no discussion of any additional witnesses took place during this court's review of these motions, thus, any such motion as addressed to "undisclosed" witnesses may be denied.[21]

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant's motion to preclude Mr. Casale's valuation testimony (Dkt. No. 42) be **DENIED,** and it is

**RECOMMENDED,** that the Government's motion to preclude the testimony of Mr. Ellis to the extent that it relies on an income capitalization method of valuation (Dkt. No. 43) be **GRANTED,** and it is

**ORDERED,** that the parties' motions for "clarification" of this court's September 10, 2009 Order (Dkt. Nos. 75, 76) are **GRANTED,** and it is

**RECOMMENDED,** that the Government's motion to preclude valuation testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney, and Any Undisclosed Valuation Witnesses (Dkt. No. 44) be **GRANTED** only to the extent that their testimony is based upon Mr. Ellis's income capitalization appraisal,

---

**21.** The deadline for disclosure of experts has passed.

and it be **DENIED** to the extent that Mr. Kearney and Mr. Falic may testify as to the value of their property as owners of that property.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen[22] (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

---

**22.** The rules were amended, changing the time for objections to a Magistrate Judge's report and recommendation from ten (10) days to fourteen (14) days. The amendments took effect on December 1, 2009.