NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3267
_____

THOMAS A. WOOD; MELISSA WOOD

v.

TROOPER PRESTYN K. SHOWERS, in their individual capacities;
TROOPER TIMOTHY M. WESESKY, in their individual capacities

Thomas A. Wood,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-16-cv-01923)
District Judge:  Honorable Matthew W. Brann
_____

Submitted under Third Circuit LAR 34.1(a)
April 24, 2020

Before:  PHIPPS, RENDELL, and FISHER, *Circuit Judges*.

(Opinion Filed:  August 21, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge.*

Thomas Wood appeals a jury verdict that rejected his excessive force claims against two Pennsylvania State Troopers. Wood sued those troopers for their role in 'bear hugging' him and taking him to the ground after he, a diabetic in a suicidal state, had overdosed on insulin in the middle of the night and refused to get in an ambulance. As a result of that encounter, Wood sustained a broken ankle, which required several surgeries, and he sought at least $150,000 in compensatory damages along with punitive damages. To prove his case, Wood retained an expert witness to testify that the troopers' use of force was greater than required for a non-threatening citizen and that, had the troopers followed crisis management techniques, Wood would have avoided injury. The troopers moved to exclude the expert from testifying, and the District Court issued an order granting that motion. Wood now challenges that order.

As a case under a federal civil rights statute, 42 U.S.C. § 1983, for violations of the Fourth Amendment, this action was within the District Court's original jurisdiction. *See* 28 U.S.C. §§ 1331, 1343(a)(3). In exercising jurisdiction over a timely appeal of a final judgment, *see* 28 U.S.C. § 1291, we will affirm the judgment because the District Court did not abuse its discretion in excluding the proffered expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

I

To support his excessive force claims against the troopers, Wood retained an independent consulting criminologist and professor emeritus, Dr. R. Paul McCauley, as

an expert witness. Dr. McCauley produced an expert report in which he recounted the facts as he understood them. From there, that report set forth the legal framework established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), for evaluating excessive force claims. The report also reviewed the use-of-force policies from the International Association of Chiefs of Police and the National Institute of Justice, but the report contained no explanation about those organizations or how they formulated their use-of-force standards. Under those organizations' standards, the report explained, the troopers did not use accepted crisis-management tactics, and if they would have done so, they could have de-escalated the situation without resorting to the use of force. Ultimately, according to the report, Dr. McCauley would have testified that taking Wood to the ground was unreasonable under the *Graham* factors and the use-of-force policies published by those two organizations.

Before trial began, the troopers moved *in limine* to prevent Dr. McCauley from testifying, and the District Court granted that motion. The District Court reasoned that although Federal Rule of Evidence 704 permits testimony on ultimate issues, Dr. McCauley's proposed testimony about the law was inadmissible because it would "merely tell the jury what result to reach." Slip Op. at 3 (quoting Fed. R. Evid. 704 advisory committee note). In further explanation, the District Court determined that the testimony about policies promulgated by organizations other that the Pennsylvania State Police would not fit the issues in the case, which concerned the conduct of two state troopers. Slip Op. at 4. As part of its analysis, the District Court visited the website of the International Association of Chiefs of Police to learn about the organization. *See* Slip

Op. at 4.

Wood argues that the District Court erred in six respects. His two primary challenges assert that the District Court erred by excluding Dr. McCauley's testimony because it (i) substituted its own judgment for the standards upon which an expert could rely and (ii) improperly excluded evidence on the use of force against an emotionally disturbed person. Wood also argues that the District Court erred as a matter of procedure by (iii) conducting internet research about the International Association of the Chiefs of Police to make a credibility determination. Finally, Wood contends that the District Court erred by making three new rules of law: (iv) that expert testimony in reliance on the standards from the International Association of the Chiefs of Police is inadmissible; (v) that to qualify as an expert on a trooper's conduct, the expert must have knowledge of the procedures that govern the Pennsylvania State Police; and (vi) that different standards apply to the troopers' conduct than municipal police officers.

## II

### A

At the core of Wood's first two challenges is the question of whether an expert may testify about the application of legal standards or other policies to the facts before the jury.

The rule against testimony on governing law partially answers that question. It is the province of a judge – not an expert witness – to instruct a jury about governing law. *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (explaining that "the District Court must ensure that an expert does not testify as to the governing law of the

case . . . because it would usurp the District Court's pivotal role in explaining the law to the jury"); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) (explaining that "it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury"). Because Dr. McCauley sought to testify about the application of the *Graham* factors, which govern excessive-force claims, the District Court did not err in excluding that component of his testimony.

But Dr. McCauley sought to testify about more than just the *Graham* factors. He was prepared to share his conclusions that the troopers' conduct fell short of standards promulgated by the International Association of Chiefs of Police and the National Institute of Justice. Unlike testimony regarding governing law, that kind of testimony may be permitted if its proponent meets the burden of establishing its admissibility. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417-18 (3d Cir. 1999). Procedurally, in a civil case, a retained expert must produce a report providing a "complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Substantively, an expert must be qualified and offer reliable testimony that fits the case. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). The reliability of an expert's conclusions and opinions hinges on the reliability of the expert's methodology. *See* Fed. R. Evid. 702(c) (requiring expert testimony to be "the product of reliable principles and methods").

In light of those principles, the District Court did not abuse its discretion in excluding the remainder of Dr. McCauley's proposed testimony. His expert report did not establish the reliability of the policies promulgated by the International Association of

5

Chiefs of Police or the National Institute of Justice. It did not describe those organizations, the process by which they developed their standards, or the general acceptance of those standards. Without that information or other evidence of reliability, *see Daubert*, 509 U.S. at 594-95, Dr. McCauley did not provide a basis for concluding that his proposed testimony was the product of reliable principles and methods for determining whether an officer used excessive force. And absent such a showing, his proposed testimony was correctly excluded.

The Dissenting Opinion characterizes this conclusion as the product of a "rigorous, inflexible approach." Dissent Op. at 3. Instead, the Dissent conceives of a much lower bar for expert testimony, one where "flaws in [an expert's] testimony," such as the reliability of an expert's principles and methods, would be primarily a question for the jury and would not be screened by the trial judge. *See id.* But that is not the legal standard. In *Daubert*, the Supreme Court explained that while a trial judge has flexibility in assessing an expert witness's reliability, "[t]he focus, of course, must be solely on principles and methodology . . . ." 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158-59 (1999) (Scalia, J., concurring) ("[T]rial-court discretion in choosing the manner of testing expert reliability . . . is not discretion to abandon the gatekeeping function . . . [and] it is not discretion to perform the function inadequately."). Lest that admonition go unheeded, the amendments to Rule 702 added four conditions for expert testimony – two of which specifically address "principles and methods." Fed. R. Evid. 702(c)-(d); *see also* Amendments to the Rules of Federal Evidence, H.R. 154 Doc. No. 106-225, at 41-53 (2000). Most relevant here is the

6

requirement in Rule 702(c) that expert testimony be "the product of reliable principles and methods." Fed. R. Evid. 702(c). And yet Dr. McCauley's report did not provide any background on the two organizations that developed policing standards; the report did not explain the methods by which those organizations developed those standards; it did not address whether those standards were ever tested or subjected to peer review; nor did it comment on the general acceptance of those standards. A trial judge does not abuse his or her discretion by excluding testimony from an expert whose methodology lacks so many indicia of reliability.

Rather than confront those omissions, the Dissent accepts Dr. McCauley's reliable application of those two organizations' policing standards to this case, *see* Dissent Op. at 2. But satisfying that requirement, *see* Fed. R. Evid. 702(d), does not cure the deficiencies in Dr. McCauley's methodology as this Circuit long ago explained, "*any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible.*" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

## B

Perhaps due to the critical deficiencies in the expert report, the District Court visited the webpage of the International Association of Chiefs of Police to learn about the organization. Wood argues that doing so was improper because it was not the judge's role to make credibility determinations. That contention fails. Evaluating the reliability of an expert's methodology is not a credibility determination but a critical gatekeeping function for judges – not juries – to perform. *See Kumho Tire*, 526 U.S. at 147

7

(explaining that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable" (quoting *Daubert*, 509 U.S. at 589)); *see also Daubert*, 509 U.S. at 592-93 (explaining that a trial judge must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue").

Nonetheless, as gatekeepers, judges do not have free rein to consider internet content – even information about an organization from its own homepage. Rather, *sua sponte* judicial research on a question of fact must still meet the standard for judicial notice, which requires an absence of a "reasonable dispute" about the fact. Fed. R. Evid. 201(b); *cf. Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). But here, the outcome of that inquiry – the propriety of judicially noticing facts from an organization's online profile – is inconsequential. Dr. McCauley failed to establish the reliability of his methods, and his opinions were not admissible.

C

Finally, by arguing that the District Court incorrectly established three new rules of law, Wood takes on too much. A district court cannot issue decisions of binding precedential weight, and thus the District Court's orders in this case are just that – rulings applied to the facts of one case. *See, e.g.*, *Farley v. Farley*, 481 F.2d 1009, 1012 (3d Cir. 1973) (noting that a district court's decision does not create binding precedent). And

8

under an abuse of discretion standard, inconsistencies between evidentiary rulings among district courts are not fatal, or even unexpected: as long as their decisions are not "manifestly erroneous," district courts may make contrary evidentiary rulings in different cases. *Joiner*, 522 U.S. at 141-42. Of course, certain errors, such as a "clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact," uniformly constitute an abuse of discretion. *Pineda*, 520 F.3d at 243 (quoting *In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999)). But no such error is present here; Dr. McCauley did not meet his burden of establishing a reliable methodology for his expert testimony.

\* \* \*

For these reasons, we will affirm the judgment of the District Court.

*Thomas Wood and Melissa Wood v. Trooper Prestyn K. Showers and*

*Trooper Timothy M. Wesesky*

*No. 19-3267*

---

**RENDELL**, <u>Circuit Judge</u>, <u>dissenting in part</u>:

The Majority concludes that the District Court simply fulfilled its role as gatekeeper. I disagree. In my view, the relatively low threshold requirement for the admissibility of expert testimony was satisfied in these circumstances, and the District Court went well beyond its gatekeeping role in conducting independent internet research without notice to the parties and relying on it in declaring the testimony inadmissible. Because I would find that the District Court abused its discretion in excluding Dr. McCauley's testimony regarding proper police procedures, I respectfully dissent.[1]

---

[1] I agree with the Majority's conclusion that the District Court correctly barred Dr. McCauley's testimony to the extent that he offered views concerning the application of the *Graham* factors to the excessive force claim, which would have essentially been a legal conclusion. But I find that the remainder of Dr. McCauley's testimony, which

We generally take a "liberal approach to admitting expert testimony" and have "eschewed imposing overly rigorous requirements of expertise." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 781, 782 (3d Cir. 1996); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 732 (3d Cir. 1994). Indeed, expert testimony should be admitted as long as there is a "logical basis for an expert's opinion testimony." *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983).

Here, a logical basis supported Dr. McCauley's testimony. He reviewed the case materials, analyzed the facts, and referred to the International Association of Chiefs of Police (IACP) model policies and procedures to support his conclusion that the defendant officer did not act appropriately in responding to this non-criminal medical-assist police call. Dr. McCauley provided an overview of proper police protocol in medical-assist situations involving emotionally distressed persons and emphasized that, here, the plaintiff was nonthreatening and potentially suicidal. Applying the IACP model procedures, Dr.

---

related to proper police procedures, could have provided helpful information to the jury and should have been admitted.

McCauley concluded that the defendant ignored widely accepted police procedures by using physical force before attempting to de-escalate the situation.

Because there was a logical basis for Dr. McCauley to refer to model police procedures to explain the de-escalation practices officers should follow in medical-assist situations, and because that information could have been helpful for the jury to understand the appropriate actions for police officers to take in such situations, the testimony should have been admitted. *See United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) ("The test of Rule 702 is whether the testimony will assist the jury."). Indeed, we have declined to "automatically discount . . . [the] presumption[] . . . that official police department policies may be considered among other things in the reasonableness inquiry." *Johnson v. City of Phila.*, 837 F.3d 343, 351 (3d Cir. 2016). Courts must take a practical approach to admitting expert testimony and apply the standards of admissibility flexibly based upon the facts of the case and the complexity of the issue. *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). This was not the type of issue where a jury must heavily rely upon the expert's testimony to understand complex scientific concepts. Instead, it involved a straightforward

3

application of model police procedures to the officer's use of force. Thus, the rigorous, inflexible approach taken by the Majority in critiquing Dr. McCauley's "methodology" is misplaced. Any flaws in his testimony could have been pursued on cross-examination and assessed by the jury.

Further, I find that the District Court abused its discretion when it conducted independent internet research—without providing notice to the parties or providing the parties an opportunity to address this research—and relied upon that research to completely exclude Dr. McCauley's testimony. Based on the internet research, the District Court inferred that the IACP procedures are inferior to Pennsylvania State Police (PSP) procedures, and therefore, Dr. McCauley's reliance upon IACP procedures warranted exclusion. The District Court reasoned that Dr. McCauley's testimony should be excluded because the information about the propriety of the defendant's actions could be elicited "more effectively" by directly questioning the defendant officer about PSP procedures. App. 6. Similarly, the District Court reasoned that Dr. McCauley's testimony may have been admitted if he had referenced the PSP procedures or if he were a former Pennsylvania state trooper instead of a former municipal police officer.

4

In making this determination, the District Court invaded the province of the jury. *See Breidor*, 722 F.2d at 1138-39 (noting that "the credibility and weight" of an expert's testimony must "be determined by the jury, not the trial judge."). Whether the IACP procedures are the best or most well-respected police procedures is irrelevant for purposes of admissibility; any challenges to the "facts and assumptions" underlying Dr. McCauley's testimony should have been addressed during cross-examination and weighed by the jury. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000) ("The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct."). I therefore conclude that the District Court did not exercise the proper gatekeeping function in excluding Dr. McCauley's testimony.

For these reasons, I respectfully dissent.